# SUPREME COURT.

George S. Scott and another agt. Jane R. Stockwell and others.

*Foreclosure of mortgage — Usury — Mortgage by wife to secure husband's debt — Surety — Release by extension of time — Pleading in.*

A mortgage for $100,000, executed by A. and his wife to plaintiffs, as mortgagees, covered property of the wife as well as that belonging to her husband. The bond, which was joint and not several, was executed by A. and B., but not by the wife of A. Of the $100,000 thus loaned $28,250 was used to pay a debt to C., for which the latter had a specific lien upon the separate property of Mrs. A., which lien was relinquished by such payment. The mortgage was not paid at maturity, and in 1875 and 1876 the mortgagees received from A. several promissory notes, aggregating $80,000, payable to his order and indorsed by him. The

receipt given for the notes contained these words: "Each note to be applied to the redemption of bond dated September 5, 1873, at maturity, if paid: "

*Held,* 1*st.* That conceding that in equity, as to the amount secured by the mortgage over and above what was used of the moneys realized thereon to relieve her separate property, Mrs. A. occupied, through the mortgage upon her separate estate, the attitude of surety only, yet her property was not released by the acceptance of the promissory notes, the payment of the mortgage debt not having in fact been extended thereby, the notes not having been sold or discounted.

2*d.* Neither did A. occupy the position of surety, although the bond was joint and not several, and his property and estate were not discharged by his death, he having been liable for the payment of the debt to C., which was paid out of the moneys advanced by the mortgagees.

3*d.* The omission of the plaintiff to serve a reply to such parts of the answer as set up payments upon the mortgage is not to be considered an admission that such payments were made

Judgment of special term affirmed by general term (28 *Hun,* 641).

*Special Term, July,* 1882.

*A. J. Vanderpoel,* for plaintiffs.

*Ira D. Warren,* for defendants.

VAN VORST, *J.*—The only evidence in support of the alleged usurious agreement, and the fact of usury being exacted, is found in the evidence of the defendant A. B. Stockwell. He testified that it was part of the agreement for the loan that interest at the rate of one per cent per month should be paid. But this testimony is far from satisfactory. An extract from his evidence is in these words: Q. Did you ever pay the one per cent a month? A. I did. Q. In what way? A. I gave him a check for $2,500. Q. Where is that check? A. The money was paid; I don't know; my brother paid the money. Q. Did you see it paid? A. I don't remember whether I did or not. Q. Will you swear that you saw it paid? A. I will not.

The testimony of Mr. Miller, one of the mortgagees, on the other hand, is quite satisfactory in respect to the retention of this sum of $2,500 from the sum agreed to be loaned. He

Scott agt. Stockwell.

testifies that it was retained to meet certain taxes and assessments supposed to be a lien on the premises, and that this amount was afterwards allowed and credited on the first six months interest on the mortgage. It is quite clear that it was so allowed, with the interest thereon, which was actually paid by the mortgagees to the borrowers. Miller also positively denies that it was agreed that interest at the rate of one per cent per month should be paid for the loan; and there is no evidence that anything beyond legal interest was either demanded or paid.

The sum of the evidence is that the borrower got the whole amount of $100,000, for which the mortgage was given, including the $2,500 at first retained, but in the end allowed as above stated.

The mortgage covered property of Jane R. Stockwell, as well as that belonging to her husband Levi S. Stockwell. The bond was executed by A. B. & Levi S. Stockwell. The loan was made at the instance of the defendant A. B. Stockwell, with whom the whole negotiation therefor was had. A portion of the proceeds, and to the amount of about $6,000, were used to pay a debt in favor of the Eagle Lock Company, of which latter company the defendant A. B. Stockwell was president, and Levi S. Stockwell was treasurer. It was the pressure for payment of this debt against the Howe Machine Company by the Eagle Lock Company, through Miller, who represented it, which in the end caused the loan to be made. A portion of the sum realized on the loan, and to the amount of about $28,250 was used to pay and discharge an obligation in favor of the Central National Bank, which debt had been created at the instance of Levi S. Stockwell, acting for himself and his wife, Jane R. Stockwell, and for which the bank had a specific lien upon the separate property of Mrs. Stockwell. And it was only when the bank received out of the moneys realized upon the mortgage in suit, the balance due upon its loan, that it relinquished its lien upon Mrs. Stockwell's property. It cannot, therefore, with propriety be said

that Mrs. Stockwell occupied the position of surety only, in so far as her obligations under the mortgage are concerned, or that her separate property was mortgaged exclusively for the indebtedness of others. To the extent, at least, that the moneys advanced under the mortgage in question were used to redeem the property from the lien in favor of the Central National Bank, her separate property was in substance mortgaged for her own benefit. Beyond that amount, however, the mortgage moneys were used for the benefit of A. B. Stockwell and Levi S. Stockwell, or the Howe Machine Company, with the management of which they were identified. The mortgage was not paid at maturity, and in the years 1875 and 1876 the mortgagees received from Levi S. Stockwell several promissory notes made by the Howe Machine Company, signed by such company and Levi S. Stockwell, as treasurer thereof, severally made payable to the order of, and indorsed by, Levi S. Stockwell. These notes in the aggregate amounted to over $80,000. Some of them have been paid and others are unpaid, and some are mere renewal notes in the same series which had not been paid.

The objection is taken on the behalf of Mrs. Stockwell, one of the mortgagors, that the acceptance of these notes by the mortgagees was an extension of the payment of the mortgage, without her knowledge or consent, and that her individual property is therefore discharged from the obligations of the mortgage.

Conceding that in equity as to the amount secured by the mortgage over and above what was used of the moneys realized thereon to relieve her separate property, Mrs. Stockwell occupied through the mortgage upon her separate estate the attitude of surety only, and is entitled to all the privileges and rights incident to such relation, the question arises, was the payment of the mortgage debt in fact extended? No actual agreement was made for any extension. And as the whole mortgage debt was past due at the time the notes were received it may be well questioned whether there was an ade-

Scott agt. Stockwell.

quate consideration for any promise to extend, express or implied (*Kellogg* agt. *Olmstead*, 25 *N. Y.*, 189).

The receipt given for the notes, or some of them, contains these words: "Each note to be applied to the redemption of bond dated September 5, 1873, at maturity, if paid." It cannot be seen that this receipt contains any promise to extend the payment of the mortgage debt. It does, however, engage that the moneys, when paid, shall be applied thereon; and I cannot discover but that Mrs. Stockwell, had she been so disposed, could, at any time before the maturity of the notes, have paid the mortgage and released her property; in which event she could have enforced her rights and remedies against those for whose advantage she had pledged her separate estate. Upon taking up the mortgage she would have been entitled to all collateral securities for its payment, including the notes in question. Mere forbearance to collect the mortgage, and a willingness on the part of the mortgagee, without an agreement, to wait until the maturity of the notes before proceeding to foreclose, would not have the effect to release the property of Mrs. Stockwell (*Mutual Life Ins. Co.* agt. *Davis*, 12 *J. & S., and cases cited*). I am aware that in the case of commercial paper a note given after the maturity of a previous obligation of that character by way of renewal has been considered as an implied extension of the prior note (*Hubbard* agt. *Gurney*, 64 *N. Y.*, 456). But in this case we have to do with a mortgage, a lien upon real property, an instrument under seal, with terms precisely determined, and the rights and remedies of the parties should not be destroyed, unless by an agreement concerning which there could be no reasonable doubt, which imposed a binding obligation upon the parties affected. The mortgagees, it is true, deposited the notes in bank, but substantially for the purpose of collection only. They neither sold nor caused either of them to be discounted. These notes are, therefore, from the beginning to be regarded as collateral security and not as operating to extend the time of payment of the mortgage. The property of Mrs. Stock-

well is, therefore, not released from the operation of the mortgage.

It is urged on the behalf of those representing Levi S. Stockwell that he was also a mere surety, and that as the bond was joint and not several his property and estate are discharged by his death.

I cannot accept that conclusion. The bond is joint and not several it is true, but Levi S. Stockwell was, together with his wife, liable for the payment of the debt to the Central National Bank, which, as has been seen, was paid out of the moneys advanced by Miller. But in no light in which I can view this transaction can his property, specifically mortgaged, be released by his death, although his estate may not be liable for any deficiency.

A. B. Stockwell did not sign the mortgage. His discharge in bankruptcy liberated him from liability on the bond. As to him, therefore, the complaint should be dismissed. No payment on the mortgage other than those specifically proved can be allowed.

The omission of the plaintiff to serve a reply to such parts of the answer as sets up other payments, is not to be considered an admission that such other payments were made. An answer of payment in whole or in part is not a counter-claim.

Findings of fact and conclusions of law, and judgment of foreclosure in pursuance of the above, should be prepared by plaintiff's attorney and a copy served on the defendant's attorney with notice of settlement.

*Affirmed in Court of Appeals, June,* **1883.**