1. CONVEYANCE BY MORTGAGOR — EFFECT — ALTERATION OF CONTRACT—DE-FICIENCY.

Where a mortgagor conveys the mortgaged premises subject to the mortgage, the mortgagor's obligation as surety for the payment of the debt is discharged by any alteration of the contract by the mortgagee, whether material or not.

2. SAME—EXTENSION OF TIME—RATE OF INTEREST—MODIFICATION BY PAROL.

Where a mortgage under seal was not paid at maturity, a parol agreement extending the time of payment and increasing the rate of interest constituted a valid modification of the mortgage.

3. SAME—EVIDENCE—FINDINGS.

Where, after a mortgagor sold the mortgaged property, and after maturity of the mortgage the mortgagee's finance committee notified a subsequent purchaser of the property, who had not assumed the mortgage, that the rate of interest would thereafter be raised from 5 to 6 per cent., and the owner subsequently paid interest at such increased rate, a finding that there had been no agreement to change the rate of interest sufficient to discharge the original mortgagor from his liability as surety for the debt was contrary to the evidence.

4. SAME—EXTENSION OF TIME.

Where a mortgage on land which the mortgagor had conveyed matured April 5, 1892, and on December 29, 1893, the owner of the land paid the mortgagee the interest due on January 1, 1894, for the previous six months, which was received and retained, the mortgagee's act in receiving such interest in advance constituted an extension of time, which discharged the mortgagor from his liability as surety for the payment of the mortgage.

Ingraham and Hatch, JJ., dissenting.

81 N.Y.S.—1

Appeal from Special Term, New York County.

Action by the New York Life Insurance Company against John Casey and others for the foreclosure of a mortgage. From a judgment against defendant Casey for any deficiency arising on the sale, he appeals. Reversed.

John Casey, on April 5, 1889, executed his bond to the plaintiff, conditioned to pay to it the sum of $24,000, with interest at 5 per cent. semiannually, the principal to become due April 5, 1892. This bond was secured by a mortgage upon the premises described in the complaint. The mortgaged premises were sold by Casey to the defendant Lydia Friedberg, and by her conveyed to the defendant Rebecca Nordenschild, by whom they were owned from July 1, 1890, to September 3, 1898. None of the grantees assumed the payment of the mortgage. This action was commenced in December, 1899, to foreclose. In his answer the defendant Casey alleged that, while the defendant Friedberg was the owner of the premises, and prior to the commencement of the action, an agreement had been entered into between her and the plaintiff, whereby, for a valuable consideration, and without his knowledge or assent, the time for the payment of the principal sum secured by the mortgage sought to be foreclosed was extended to a date subsequent to April 5, 1892, and the rate of interest to be paid was changed from 5 to 6 per cent. per annum; and that at the time such agreement was made extending the time for the payment of the mortgage and changing the rate of interest thereon the mortgaged premises were of greater value than the whole amount of the bond and mortgage with all accrued interest thereon. It appeared upon the trial that in September, 1893, while Rebecca Nordenschild was the owner of the premises, and plaintiff knew she was the owner, the rate of interest on the mortgage was increased, by order of the finance committee of the plaintiff, from 5 to 6 per cent. per annum, to take effect from October 1, 1893; and that on December 29, 1893, of that year six months' interest from July 1, 1893, to January 1, 1894, at the rate of 5 per cent. for the months of July, August, and September and at the rate of 6 per cent. for the months of October, November, and December, amounting in all to $660, was paid by her to the plaintiff. In December, 1893, by order of the auditor of the plaintiff, the rate of interest was reduced to 5 per cent. per annum, to take effect from January 1, 1894, and a collateral bond was given by her to the plaintiff, by the terms of which she agreed to pay the amount of the mortgage on demand. There was no claim that Casey had any knowledge of the dealings between the defendant Nordenschild and the plaintiff; nor was there any dispute but that during that period between July 1, 1893, and January 1, 1894, the value of the mortgaged premises was equal to the amount of the mortgage and accrued interest. Upon the ground that no agreement to change the rate of interest or to extend the time of payment of the bond and mortgage was made, and that no consideration for such an agreement was shown, the Special Term directed judgment in favor of the plaintiff for the sale of the premises, and adjudged that the defendant Casey was liable for any deficiency arising on the sale of the mortgaged premises. From the judgment entered on the decision thus made the defendant Casey appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Jacob Steinhardt, for appellant.
W. J. Bolger, for respondent.

O'BRIEN, J. There is no conflict of testimony, or dispute about the facts, nor doubt as to the law, and yet the conclusion to be drawn as to whether or not what occurred with respect to dealing with the bond and mortgage resulted in a discharge of Casey from all liability upon the bond requires serious consideration. It is agreed that under the settled law of this state, when a mortgagor conveys

the mortgaged premises subject to the mortgage, the land becomes the primary fund for the payment of the mortgage debt, and the mortgagor occupies the position of a surety to the extent of the value of the mortgaged premises, and is entitled to all the rights of a surety. Osborne v. Heyward, 40 App. Div. 78, 57 N. Y. Supp. 542; Antisdel v. Williamson, 165 N. Y. 372, 59 N. E. 207. In the latter case it was also held that the obligation of a surety "is strictissimi juris, and he is discharged by any alteration of the contract to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury." It is conceded by the respondent that a. binding extension of time to a grantee would release the mortgagor ·on the principle applicable to all sureties. Calvo v. Davies, 73 N. Y. 211, 29 Am. Rep. 130. The crucial question, therefore, upon the undisputed facts, is whether there was proof of an agreement, enforceable by the debtor, which changed the terms of Casey's original contract, either in respect to the rate of interest which should be payable or extending the time of payment.

It is not necessary that the agreement changing the terms of the contract should be in writing, for, after a breach of a sealed instrument, it may be modified in any respect, or even wholly rescinded, by an executed parol agreement. Kane v. Cortesy, 100 N. Y. 132, 2 N. E. 874; Dodge v. Crandall, 30 N. Y. 294; Thomson v. Poor, 147 N. Y. 402, 42 N. E. 13. This subject is well summarized in Brooks v. Wright in 95 Mass. (13 Allen) 72, wherein it is said:

"We know of no rule which requires that such an agreement to give time to a principal by which a surety will be discharged must be in writing, or in any precise form of words, or even in express language at all. It is a question of mutual understanding and intention, and, like other contracts, the agreement of the parties may be derived from and inferred by acts, declarations, facts and circumstances. When such are the sources from which the mutual agreement of the parties is to be gathered, it is for the jury to determine what the intention and understanding were, if any, upon which the minds of the parties met. That is their contract."

Upon the question as to changing the terms of the contract as to the payment of the rate of interest we have the fact that by order of the finance committee of the plaintiff the rate of interest was increased, and that, in compliance with such order, the then owner of the premises paid such increase. We do not understand that any contention is made but that the members of the finance committee had it within their power to and could make an agreement with the owner of the mortgaged premises changing the rate of interest. We have, therefore, the case of two parties competent and able to enter into an agreement, and, as evidence that their minds met on a single proposition, the direction of the committee, and the acquiescence of the then owner of the property, proved by the fact that, in compliance with the order, the interest at the new and increased rate was paid by her and received by the plaintiff. It is true that there was no express agreement; but under the law which permits inferences to be drawn from the declarations and acts of parties there was certainly enough, it seems to us, from which the inference might fairly be drawn of an agreement between them. We are not unmindful of what was

said in Scott **v.** Stockwell, 65 How. Prac. 249, affirmed 28 Hun, 641, and 93 N. Y. 636:

"We have to do with a mortgage, a lien upon real property, an instrument under seal, with terms precisely determined; and the rights and remedies of the parties should not be destroyed, unless by an agreement concerning which there could be no reasonable doubt, which imposed a binding obligation upon the parties affected."

Considering the action of the finance committee, communicated to the owner of the property, that the interest thereafter payable should be at the rate of 6 per cent. instead of at the former rate of 5, and the acquiescence in such action on the part of the owner in thereafter paying, and the company in thereafter receiving, the interest at the new rate of 6 per cent., we do not think there could be any reasonable doubt as to the then intention of the parties to change the rate of interest. This is the only inference deducible from the evidence, and it leaves the finding to the contrary without any evidence to support it.

So, too, upon the question of the extension of the time of payment, we think that the evidence leads to but one conclusion, namely, that there was a valid agreement, which extended the time of payment of the principal sum without the knowledge or consent of the defendant Casey. It will be recalled that the evidence is that the defendant Nordenschild paid the plaintiff on December 29, 1893, the sum of $660 interest due on January 1, 1894, for the previous six months. That amount included interest in advance for three days, or until January 1, 1894, and we find no answer to the contention that by the receipt and retention of such interest in advance the plaintiff was precluded from taking any steps to foreclose the mortgage until the time for which interest had been already paid had expired. In Bangs v. Strong, 7 Hill, 250, 42 Am. Dec. 64, it was held that an extension of the time of payment for one day released the surety. And in Wakefield Bank v. Truesdell, 55 Barb. 602, the facts were that "on the 23d of February, 1855, the Beaver Manufacturing Company, by its treasurer, made its promissory note * * * to the order of John Thompson, payable at the Wakefield Bank, at six months after date. The note was indorsed by the payee. The payment was jointly and severally guarantied by the defendant and several others, and on the 28th day of February the note was discounted by the plaintiff for the accommodation of the maker, and the proceeds placed to the credit of Thompson, who was an agent of the company. On the 24th of August, 1855, John Thompson paid to the cashier of the plaintiff, with the funds of the maker, the interest on the note up to the 26th day of February, 1856, which payment was made without the knowledge or assent of the defendant. The payment was made and received specifically for interest, and the cashier indorsed upon the note the words, 'Int. paid to Feby. 26th, 1856,' but no express agreement was made to wait for the payment of the principal till that time, or any agreement other than what is to be implied from the transaction as above stated." The court affirmed the judgment entered upon the finding of the referee that the time of payment had been extended without the knowledge or assent of the defendant, and

.that the latter was thereby discharged from his liability as surety; saying that it was evident that it was the intention and understanding of the parties that time should be given, and that the cashier otherwise "should have declined to receive the interest at all, or have informed Thompson that he should reserve the right to collect the note at any time."

In principle, we do not think that the present case is distinguishable from Wakefield Bank v. Truesdell, supra; for here, too, although there was no express agreement to wait for the payment during the three days, the right to enforce payment was not expressly reserved, and therefore the result was to suspend the right of action and discharge the surety.

Having reached the conclusion that the judgment must be reversed, and a new trial ordered, we do not deem it necessary to determine the other point raised by the appellant as to the alleged irregularity and defect in the judgment in that it was entered upon insufficient proof of service upon the parties to the action, as this, upon a new trial, will necessarily be corrected.

The judgment should, accordingly, be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

INGRAHAM, J.   I do not concur in the reversal of this judgment.   The question presented is whether the obligor upon the bond to secure the payment of the mortgage upon real estate was discharged from liability in consequence of the receipt by the mortgagee on December 29, 1893, of the six-months interest due on the 1st of January, 1894, from the grantee of the property covered by the mortgage.   The action was to foreclose the mortgage.   The referee filed his decision under section 1022 of the Code of Civil Procedure, concisely stating the grounds upon which the issues were decided, and directing judgment to be entered thereon.   That decision, after setting forth the bond and mortgage to secure its payment, stated that the mortgaged premises were conveyed by Casey to one Friedberg, and by Friedberg to one Nordenschild, who, in 1893, was the owner of the premises; that there was no agreement on the part of the plaintiff to change the rate of interest, or to extend the time of payment of the bond and mortgage; and that the fact that the plaintiff accepted a different rate of interest than that provided in the bond and mortgage does not prove an agreement to change the rate of interest, and that no consideration for such agreement was shown.   We have thus a finding of fact that there was no agreement to extend the time of payment of the mortgage which would discharge the liability of the obligor upon the bond which the mortgage was given to secure.   The only evidence in the case as to such an agreement was contained in the cross-examination of an employé of the plaintiff.   He testified that the interest for the six months commencing July 1, 1893, and ending January 1, 1894, was paid on December 29, 1893; that that was for the interest due on January 1, 1894, and was for the previous six months.   There

is no allegation in the answer that an agreement was made whereby the payment of the mortgage debt was extended during this period; nor was such a defense insisted upon at the trial. The extension set up in the answer was that the time for the payment of the principal sum secured by the said mortgage sought to be foreclosed in this action was extended to a date subsequent to April 5, 1892, and from the time of entering into such agreement the rate of interest to be paid on the principal sum secured by said mortgage was changed from 5 per cent. per annum to 6 per cent.

It seems to me that the finding of the trial judge that the extension here alleged was not proved is sustained by the evidence. It appearing, however, upon the cross-examination of one of the plaintiff's witnesses, that the interest that became due on the 1st of January, 1894, was received by the plaintiff on the 29th of December, 1893—three days before it became due—it is held in the prevailing opinion, as a matter of law, that the receipt of such interest discharged the bond, and that there was no foundation in the evidence for the finding of the trial judge that there was no agreement to extend the time for the payment of the mortgage. It may be conceded that a valid agreement to extend the payment of this mortgage for one day would discharge the obligor, but the question presented is whether or not the receipt of this interest three days before it became due was conclusive evidence of such an agreement. In Bangs v. Strong, 7 Hill, 250, 42 Am. Dec. 64, there was an express agreement, the execution of which seems to have been admitted, by which the time for the payment of the mortgage was extended from eight to ten months, during which time the mortgagee could not proceed with the collection of the debt, and this agreement was made between the creditors and the principal debtor without the consent of the surety. Judge Bronson, in delivering the opinion of the Court of Errors, says:

"Where time is thus given to the principal debtor by a valid agreement which ties up the hands of the creditor, though it be but for a single day, it is quite clear that the surety is discharged. The principle is the same whether it be long or short."

There is no reason to doubt the entire correctness of this statement. The question in this case is whether such an agreement was proved, so that the finding of the trial judge that there was no agreement is unsupported by the evidence. In the case of Wakefield Bank v. Truesdell, 55 Barb. 602, the true rule, I think, is stated. That action was on a promissory note, the payment of which was jointly and severally guarantied by the defendant and several others, and which had been discounted by the plaintiff for the accommodation of the maker. This note was due on the 23d of August, 1855, and on the 24th day of August, the day after it was due, the maker paid to the plaintiff the interest on the note up to the 26th day of February, 1856, being six months' interest in advance. This payment was made and received specifically as interest, and the cashier indorsed on the note the words, "Interest paid to February 26, 1856." The referee found that the plaintiff, without the knowledge or assent of the defendant, extended the time of payment for six months, and

gave the maker time for its payment until the 26th day of February, 1856, and that the defendant was thereby discharged from his liability as surety, and ordered judgment for the defendant; and it was held that this finding was sustained by the evidence. The court there stated: "The real question is, what was the intention of Thompson when he paid the interest on the 24th of August, in behalf of the makers, and what was the intent of the cashier when he received the interest and indorsed it on the note, and how did they understand the intentions of each other?" And it was held that it was intended to extend the time of the payment of the note to the 26th of February, 1856. The question here is, what was the intent of the plaintiff and the owner of the property making this payment on the 29th of December, 1893, when the interest was paid? There is certainly no proof of any intention or understanding to extend the time of payment of this mortgage. The interest was due on the 1st of January, 1894. Three days before the interest was due the owner of the property paid it, and all we have is the fact that on that day the plaintiff received it. Unless we are to say that, as a matter of law, this receipt of interest extended the time of the payment of the mortgage for three days, the finding of fact by the trial judge should not be disturbed. Yet it is quite clear that, if it was understood between the parties that the receipt of the interest three days in advance should not have the effect of extending the time of the payment of the bond, so that, notwithstanding the receipt of this interest, the plaintiff could have proceeded to collect the amount, the obligor on the bond would not have been discharged. As before stated, the payment of this interest was not set up in the answer as a defense. Nor was it claimed upon the trial that this payment of the interest was an agreement to extend the time of the payment of the bond. The person making the payment or the officer of the company who received it was not examined as a witness. No evidence was offered to show the circumstances under which the payment was made, and proof of any such agreement under the pleadings would not have been admissible. I do not think we are justified in reversing the judgment because a fact appeared upon cross-examination of the witness which was capable of an explanation, and which was not pleaded as a defense, and would not have been allowed to be proven upon the trial if evidence had been offered of that fact as a defense. Where interest upon a mortgage is about to become due, the mere fact that the mortgagee, out of abundant precaution, anticipates its payment by a day or two, and that money is received by the mortgagee as a payment as of the day when the interest was to become due, without any understanding, express or implied, that there is an intention on behalf of either party to extend the time of payment of the mortgage, there cannot, I think, arise a legal implication that there was such an extension. To discharge a surety, there must have been an intention to extend the time of payment of the bond, and, while there may be circumstances from which such an agreement may be inferred, a mere anticipation of payment of the interest for three days, where the evident intent was not to extend the time, but out of abundant caution to have the interest in the hands of the mortgagee upon the day that

it became due, no such intention is necessarily inferred. In the year 1894 the 1st of January came on Monday, which was a legal holiday. The interest could not have been paid on Sunday, and the Saturday before, which was the 30th of December, was a half holiday. If the payment had been made on Saturday, so that on the 1st of January the plaintiff would be in possession of the money, there could be no claim, I think, that there was an extension of the payment of the bond. The fact that the day before the owner of the property paid to the mortgagee the interest that was due on the legal holiday was not an extension of the payment of the bond. A mere anticipation by the person who had to pay the interest that would become due on the 1st of January on the 29th of December, so that the plaintiff could have the funds on the day that the interest became due to apply to the payment of the interest, was not, I think, a binding extension of the time of payment. I think, therefore, that, as this extension was not pleaded and was not insisted upon before the trial judge, he was justified in refusing to consider it, and that his finding that there was no extension was sustained by the evidence.

HATCH, J., concurs.