### LITTLE v. KIRBY et al. (No. 7303.)

(Supreme Court, Appellate Division, First Department. July, 9, 1915.)

Appeal from Trial Term, New York County.

Action by Julia W. Little to foreclose a mortgage against John J. Kirby and others. From so much of the judgment as required the defendant Kirby to pay any deficiency on the sale of the premises, he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John Delahunty, of New York City, for appellant.

Pruyn & Whittlesey, of New York City Charles W. Whittlesey, of New York City, of counsel), for respondent.

PER CURIAM. Judgment affirmed, with costs.

CLARKE, J. (dissenting). The action was brought to foreclose a second mortgage for $9,000, executed November 18, 1907, on premises 116 West Seventy-Sixth street, New York City, and given to secure a bond in like amount due October 1, 1910. The premises in

question originally belonged to plaintiff, and were transferred by her to defendant Kirby, November 18, 1907, subject to a first mortgage which had been made by plaintiff on the same day, in the sum of $20,000. On November 22, 1907, defendant Kirby conveyed the premises to Dr. Grandin, for whom he was acting in taking the title, subject to the two mortgages before mentioned. The breach alleged is the failure by defendants in the payment of their interest on said second mortgage, due November 18, 1913.

Defendant Kirby interposed an answer, alleging that subsequent to the conveyance by him to defendant Grandin, and prior to the commencement of the action, one or more agreements were entered into between plaintiff and defendant Grandin, whereby for a valuable consideration, and without the knowledge or assent of this defendant, the time for the payment of the principal sum, secured by said mortgage, was extended to a date or dates subsequent to October 1, 1910 (the due date of the original bond), and that at the times of said several agreements extending the time for the payment of said mortgage the premises were of greater value than the whole amount of the principal of said bond and mortgage, together with all accrued interest thereon.

It appears that after the conveyance to Dr. Grandin plaintiff made a claim against him for certain mirrors and other articles which were left in the house at the time of the original lease to Dr. Grandin. Subsequently she brought an action against him for conversion in the City Court. Dr. Grandin at the same time brought an action against her to recover $481 for the breach by her as landlord of a covenant to make repairs contained in the lease entered into between them. These actions were pending at the time the negotiations for the extension of the mortgage were begun. The term of the bond in question expired October 1, 1910.

Mr. Boisse, a lawyer and the attorney for Dr. Grandin in such negotiations, testified:

That in November, 1910, at the request of Dr. Grandin, he saw Robert F. Little, the attorney for and son of the plaintiff, and asked him if he would extend the second mortgage of $9,000. That Mr. Little spoke about the actions that were pending. That they discussed the possibility of having both actions discontinued, and of Dr. Grandin agreeing to return these mirrors in consideration of an extension of the mortgage for three years. That thereafter they had another conversation. "I said to Mr. Little that Dr. Grandin would discontinue his action if Mrs. Little would discontinue hers, and that also he would give up the mirrors if we got an extension of three years of the mortgage; and Mr. Little and I agreed to that on behalf— I agreed to it on behalf of the doctor, and I believe that he agreed to it on behalf of his mother."

He further testified:

That up to this time Mr. Kirby's name was not referred to. That he had never met him, and did not know he was on the bond and mortgage. That after he had perfected this agreement with Mr. Little he asked Dr. Grandin to give him the papers, so that he could draw up an extension agreement and stipulations to discontinue the suits. Dr. Grandin told him that he had none of the papers, to go and see Mr. Kirby. He did, and asked Mr. Kirby to lend him all the papers in those actions, in order that he could, as an attorney,

draw up stipulations and agreement. Mr. Kirby said that he had all the papers, and that he would draw up those papers himself.

Mr. Kirby testified:

That he recollected seeing Mr. Boisse in the fall of 1910. He had never seen him before that day. He had never heard of any negotiations with respect to an extension of this mortgage prior to that time. In consequence of what he said, he called up Mr. Little and told him that he had been informed by Mr. Boisse that the two actions then pending were to be discontinued, and that his mother had agreed to extend the second mortgage on Dr. Grandin's house for a period of three years, and that Dr. Grandin had agreed to return the mirrors the following summer at any time they were demanded by Mrs. Little. Mr. Little stated that that was correct, that "that agreement had been entered into," and I said, "Do you want me to prepare the stipulations or discontinuance of the two actions, or will you prepare them?" He said, "I would like to have Dr. Grandin sign the usual form of extension agreement which I have prepared, and I will send it to you, and then you can send it to Dr. Grandin and have him sign it, and when you get back you can return it to me"—and it was to be signed in duplicate—"return it to me, and I will have Mrs. Little sign, and at the same time you can send the stipulations to discontinue the two actions, and I will have Mr. Paine sign one of them, and return in each case to you the stipulations signed by Mr. Paine." A day or two later, and about the 8th of December, Mr. Little sent him, without any communication, the agreement in duplicate, which has been marked for identification. He sent them to Dr. Grandin, and telephoned him with reference to the terms of the agreement which had been related to Kirby by Mr. Boisse and Mr. Little. He said he knew all about it, and that he was ready to sign that agreement. Dr. Grandin returned it with a letter on the 11th of December, and on the same day he witnessed his signature and took his acknowledgment. On the 12th of December he prepared stipulations in triplicate discontinuing the two actions, and sent two copies of each of the stipulations and the two written extensions, each signed and acknowledged by Dr. Grandin, to Mr. Little with a letter.

There were some passing back and foward of the different papers, and some delays, and Kirby was asked:

"Q. During these transactions, was your consent ever asked to this paper —to this extension? A. Never. Q. By Mr. Little or anybody else? A. Never was asked, and never given.

"The Court: You considered yourself as acting as attorney for Dr. Grandin? A. I did, sir; solely as such."

I think that the agreement to extend the mortgage was entered into without the knowledge or consent of the defendant Kirby. It was after this agreement was made, and as a mere matter of convenience, that he prepared the papers to evidence the agreement which had been made. I do not think that the defendant should be held liable. A valid verbal agreement had been made before he knew anything about it.

"It is not necessary that the agreement changing the terms of the contract should be in writing, for after a breach of a sealed instrument it may be modified in any respect, or even wholly rescinded, by an executed parol agreement. * * * 'We know of no rule which requires that such an agreement to give time to a principal, by which a surety will be discharged, must be in writing, or in any precise form of words or even in express language at all.'" New York Life Ins. Co. v. Casey, 81 App. Div. 92, 81 N. Y. Supp. 1; Antisdel v. Williamson, 37 App. Div. 167, 55 N. Y. Supp. 1028, affirmed 165 N. Y. 372, 59 N. E. 207; Kane v. Cortesy, 100 N. Y. 132, 2 N. E. 874.

Mere knowledge subsequent to the fact is not a consent. I think mere acquiescence is not equivalent to a consent. In Edwards v. Coleman, 6 T. B. Mon. (Ky.) 567, it was said:

"To prevent the discharge by such new agreement, the surety must concur. It is his concurrence which binds him by the terms and increased risk of such new contract. His concurrence bound him by the terms of the old contract; his concurrence must bind him by the terms of the new. It is not enough to bind him that he is informed, and is passive; he is not required to object, or protest; he must actively concur, and consent to be bound by the terms of the new agreement. This is the true principle extracted from a great number of decisions. See King v. Baldwin, 2 Johns. Ch. 559; Ludlow v. Simond, 2 Caines Cas. 1 [2 Am. Dec. 291]; Deming v. Norton, Kirby [Conn.] 397; Walsh v. Bailie, 10 Johns. 180; Rathbone v. Warren, 10 Johns. 587; Burn v. Poaug's Administrator, 3 Desaus. [S. C.] 604; Rutledge v. Greenwood, 2 Desaus. [S. C.] 389; Butler v. Hamilton, 2 Desaus. [S. C.] 230 [2 Am. Dec. 692]; Commissioners of Berks v. Ross, 3 Bin. [Pa.] 523 [5 Am. Dec. 383]; [Com. v. Wolbert] 6 Bin. [Pa.] 295 [6 Am. Dec. 452]; Norton v. Roberts, before cited."

I dissent from the affirmance of this judgment so far as the appellant is concerned.

LAUGHLIN, J., concurs.