WILLIAM A. REARDON, Plaintiff, *v.* BRAYTON W. WOOD and Others, Defendants.

Supreme Court, Oneida County, March 12, 1931.

*Dunmore, Ferris & Dewey* [*Gilbert Hughes* of counsel], for the plaintiff.

*Pratt & Fowler* [*Willard R. Pratt* of counsel], for the defendants.

DOWLING, J.   On or about August 27, 1926, plaintiff loaned to the defendant Olympic Theatre Corporation $1,500, and took its promissory note for that amount, dated August 27, 1926, indorsed by the defendants Smith and Wood, payable August 27, 1927, at the Oneida National Bank, Utica, N. Y., with interest at ten per cent.   Plaintiff accepted said note and before the due date thereof delivered said note to said bank for collection.   On the due date said bank presented it for payment, payment was refused and the note was dishonored for non-payment.   On the 29th of August, 1927, the first business day after the dishonoring of said note, it was duly protested and notice of protest was mailed to the said indorsers to their last known place of residence which was Utica, N. Y.

On August 31, 1927, said corporation paid plaintiff the sum of $151.35, being one year's interest at ten per cent on the principal of said note, and $1.35 protest fees. Nothing was paid upon the principal. After the receipt of said interest, the plaintiff called upon said corporation every two or three weeks for payment of said note. The president of the corporation succeeded in avoiding payment of said note under various pretexts.

On August 18, 1928, said corporation paid plaintiff $150, being one year's interest on said note at ten per cent. After receipt of this interest, plaintiff pressed the corporation for the payment of said note from time to time, without success.

In the spring of 1929 plaintiff sued the indorsers upon said note. Said corporation did not appear or answer. The indorsers answered, setting up two affirmative defenses, viz.: (a) *That no notice of protest of said note was given to them and by reason thereof they were released and discharged as indorsers;* (b) *that plaintiff, without their knowledge or consent, and in consideration of the payment of $150 on August 18, 1928, being for one year's interest on said note from August 27, 1927, to August 27, 1928, at ten per cent, agreed to and did extend the time of payment of said note to and including August 27, 1928, and by reason thereof released them as indorsers thereon.*

The case was tried before a jury in January, 1931. The trial court submitted to the jury two questions, viz.: (a) Whether or not notices of protest were mailed to said indorsers, and (b) whether or not on the 18th of August, 1928, at the time the plaintiff accepted said $150 interest, he intended to agree and did agree with said corporation, the maker of said note, to extend the time of payment thereof to and including August 27, 1928, thereby discharging said indorsers from liability upon said note.

Plaintiff introduced certificate of protest of said note showing that on the 29th of August, 1927, notices of protest were mailed to said indorsers at Utica, N. Y. Said defendants testified that they never received said notices of protest and did not know that said note had been dishonored and protested until shortly before the institution of this action.

Said indorsers offered no evidence that an agreement was in fact made between plaintiff and said corporation on the 18th of August, 1928, whereby plaintiff intended to and did extend the time of payment of said note. They relied upon the fact that the receipt of said interest by the plaintiff on August 18, 1928, in advance of the time that it became due, was *prima facie* evidence of an agreement upon the part of the plaintiff to extend the time of payment of said note until and including August 27, 1928. Plaintiff, however, to overcome and rebut said *prima facie* case,

testified that, while he received said interest on August 18, 1928, he did not agree to extend the time of payment of said note for any period whatever; that there was no written or verbal agreement between him and said corporation in respect to an extension of the time of payment of said note; that the subject was never brought up or discussed between him and the said corporation. This evidence was not contradicted. The president of said corporation was present in court but was not called by either side to testify.

The jury found for the plaintiff upon both of said questions and returned a verdict in plaintiff's favor for the principal of said note, with accrued interest at six per cent and credited thereon sixty dollars, overpayment of interest on August 18, 1928.

Said indorsers move to set aside said verdict and for a new trial upon the ground that it is against the weight of evidence in respect to both of said affirmative defenses.

The question as to whether or not said notice of protest was mailed was properly submitted to the jury (*Latham* v. *Sheff*, 193 App. Div. 576; *Union Bank* v. *Deshel*, 139 id. 217), and their attention was directed specifically to the evidence bearing upon the subject. The credibility of the defendants Wood and Smith, interested parties, was for the jury. Their decision on this question is fairly in line with the evidence and should not be disturbed.

In respect to whether or not plaintiff extended the time for the payment of said note, a more serious question is involved. " The general rule is that the reception of interest in advance upon a note is *prima facie* evidence of a binding contract to forbear and delay the time of payment, and no suit can be maintained against the maker during the period for which the interest has been paid, unless the right to sue be reserved by the agreement of the parties. The payment of interest in advance is not of itself a contract to delay, but is evidence of such contract, and while this evidence may be rebutted, yet in the absence of any rebutting evidence it becomes conclusive." (Brandt Surety [2d ed.], 352; *N. Y. Life Ins. Co.* v. *Casey*, 178 N. Y. 381, 385, 388; *Germania Life Ins. Co.* v. *Casey*, 98 App. Div. 88, 90.) Said indorsers argue that the *prima facie* case herein was not overcome by plaintiff's merely showing that nothing was said between him and said corporation as to any extension of time for the payment of said note, and that there was no agreement between him and said corporation extending the time for the payment of said note; that it was incumbent upon the part of the plaintiff, before he could overcome said *prima facie* case, to prove that it was agreed between him and the maker of said note that, by accepting payment of said interest, the time of payment of said note was not extended; that his right to proceed

to the collection of said note by action was specifically reserved, and that the indorsers were not released or discharged by the acceptance of said interest.

It is admitted here that the payment of interest to plaintiff on the 18th of August, 1928, was made without the knowledge or consent of the indorsers.

In *New York Life Ins. Co.* v. *Casey* (*supra*, 385), Judge GRAY, writing for the court, says: " With respect to so much of the question as turns upon the existence of any agreement by the plaintiff to extend the time of payment, *I concur with all that was said below by the dissenting justices, through Mr. Justice* INGRAHAM, *and with what is said by Judge* WERNER *in his opinion,* and I shall not continue that discussion." (Italics are writer's.)

Justice INGRAHAM, in *New York Life Ins. Co.* v. *Casey* (81 App. Div. 92), said in his dissenting opinion (at p. 101): " *Where interest upon a mortgage is about to become due, the mere fact that the mortgagee out of abundant precaution anticipates its payment by a day or two and that money is received by the mortgagee as a payment as of the day when the interest was to become due, without any understanding, express or implied, that there is an intention on behalf of either party to extend the time of payment of the mortgage, there cannot, I think, arise a legal implication that there was such an extension. To discharge a surety there must have been an intention to extend the time of payment of the bond, and while there may be circumstances from which such an agreement may be inferred,* a mere anticipation of payment of the interest for three days where the evident intent was not to extend the time, *but out of abundant caution to have the interest in the hands of the mortgagee upon the day that it became due,* no such intention is necessarily inferred. \* \* \* An anticipation of the payment of the interest that would become due on the first of January, so that the plaintiff could have the money on the day that the interest became due to apply to its payment, was not, I think, a binding extension of the time of payment." (Italics are writer's.)

In *New York Life Ins. Co.* v. *Casey* (*supra*), Judge WERNER said, in his dissenting opinion (p. 387): " It is the settled law of this State that any extension of the mortgage debt by the creditor, without the knowledge or consent of the bondsman, releases the latter to the extent of the value of the land. \* \* \* The respondent gave no evidence of any express agreement to extend the time or to forbear the collection of the debt during the days mentioned. *The receipt by the plaintiff's auditor of the interest on December 29th is relied upon as of itself constituting an agreement to extend the time of payment, or to forbear the enforcement of the debt.* \* \* \* *The*

*taking of interest in advance may properly be regarded as prima facie evidence of an agreement to extend the time of payment, which may be rebutted by other facts and circumstances.* Applying this rule to the case at bar, it will be seen that only three days intervened between the payment of the interest and the date when it was due. [Only nine days intervened in the instant case.] * * * *Nothing was said about an extension of time, and the circumstances which indicate that there was no intention to extend the time of payment are, to say the least, quite as strong as those relied upon to show that such an intention existed. Taking all the evidence together, we cannot say that there were no circumstances to rebut the presumption arising from the acceptance of the interest by the plaintiff three days in advance. It was, therefore, a question of fact whether such an extension was intended and we think the Appellate Division erred in reversing this finding as a matter of law.*" (Italics are writer's.)

Counsel for the said indorsers also argues that the receipt by the plaintiff, on August 18, 1928, of ten per cent interest also operated to relieve said indorsers. The contrary is held in *New York Life Ins. Co.* v. *Casey* (*supra*, 385, 386).

To overcome defendants' *prima facie* case, it was not incumbent upon the part of the plaintiff to establish affirmatively that he had made no agreement extending the time of the corporation to pay said note and reserving his right against said indorsers. It was sufficient for him to show that he did not intend to extend the time of payment of said note, when he accepted said interest, and that no agreement was made with the maker whereby he did extend the time of payment of said note. Upon the testimony of the plaintiff in this respect and upon all of the facts and circumstances, the jury were justified in finding with the plaintiff that there was, in fact, no extension of time for payment of said note, and that said indorsers were not discharged from liability thereon.

Motion to set aside said verdict, upon the grounds stated, must be denied, with an exception to defendants.

Ordered accordingly.