SUSAN E. MURRAY et al., Executors, etc., Respondents, v. PHEBE MARSHALL, Appellant.

Although where an obligor and mortgagor sells and conveys the mortgaged premises subject to the mortgage, but with no covenant on the part of the grantee to pay, no technical relation of principal and surety arises between them, yet as the land is the primary fund for the payment of the debt, in respect thereto and to the extent of its value the grantee stands in the relation of a principal debtor, and the grantor has an equity similar to that of a surety.

Where, therefore, in such case the holder of the bond and mortgage by a valid agreement with the grantee, and without the assent or knowledge of the grantor, extends the time of payment of the mortgage, to the extent of the value of the land at the time of the agreement, the latter is discharged from liability upon his bond; to that extent the creditor practically takes the land as his sole security and assumes the risk of collecting that amount out of it.

In an action upon a bond the defense was that a mortgage was given as security for its payment; that defendant conveyed the mortgaged premises subject to the payment of the mortgage, and was discharged by an agreement made, without his assent or knowledge, between the plaintiff and the grantee, whereby in consideration of the payment by the latter of $500 of the principal and the interest unpaid, the former extended the time of payment of the residue. The trial court found the facts as alleged in the answer, and directed a dismissal of the complaint; there was no finding or request to find as to the value of the land at the time of the extension, and on appeal to this court the evidence was not returned. *Held*, it was a fair inference from the facts found, that the value of the land equaled the amount of the mortgage debt; and that it might properly be assumed in support of the judgment.

*Penfield* v. *Goodrich* (10 Hun, 41), overruled in part.

(Argued January 16, 1884; decided February 8, 1884.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 12, 1882, which reversed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury.

This action was upon a bond executed by defendant to plaintiffs' testator. The answer averred, and the court found in substance, that at the time the bond was executed, a mortgage was also executed by defendant to secure the payment thereof;

that thereafter defendant sold and conveyed the mortgaged premises subject to said mortgage; that plaintiff's testator, in consideration of the payment to him by the grantee of $500 of the principal and of the interest due upon the bond and mortgage, executed and delivered to said grantee, without the knowledge or assent of defendant, an instrument under seal, extending the time of payment of the balance unpaid for three years, whereby the answer claimed, and the trial court found defendant was released and discharged from all liability.

*Henry D. Birdsall* for appellant. The agreement executed by Annie M. Enright, as executrix, is equally as binding and effectual as though executed by both the executrices. (*People, ex rel.* v. *Kreyser*, 28 N. Y. 226; *Bogert* v. *Hertell*, 4 Hill, 492; *Fitch* v. *Forman*, 14 Johns. 172; *Stuyvesant* v. *Hall*, 2 Barb. Ch 151.) Such agreement being based upon a valuable consideration, is valid and binding upon the plaintiffs and enured to the benefit of the defendant. (*Jester* v. *Sterling*, 25 Hun, 344, 348.) Such agreement operated generally and affected not only the plaintiffs and Catharine E. Hockemeyer, but the mortgagor, the defendant, as well. It not only barred an action of foreclosure by the plaintiffs against Catharine E. Hockemeyer, but any action by the plaintiffs against the defendant upon her bond. (*Grinnan* v. *Platt*, 31 Barb. 328; *Ducker* v. *Rapp*, 67 N. Y. 464; *Bohm* v. *Goldstein*, 53 id. 634; *Scott* v. *Frink*, 53 Barb. 533.) The mortgaged premises were the primary fund for the payment of the mortgaged debt. (*Johnson* v. *Fink*, 51 N. Y. 333; *Flower* v. *Lance*, 59 id. 603.) As the plaintiffs have interfered with the rights of defendant, and absolutely prevented her from being substituted to the mortgage security as it originally existed with an immediate right of action, the defendant is, therefore, wholly discharged from liability upon her said bond. (*Calvo* v. *Davies*, 73 N. Y. 311; *Paine* v. *Jones*, 76 id. 274; *Niemsewiez* v. *Gahn*, 3 Paige, 614; *B'k of Albion* v. *Burns*, 46 N. Y. 170; *Miller* v. *McCann*, 7 Paige, 451; *Ducker* v. *Rapp*, 67 N. Y. 464; *Lester* v. *Sterling*, 25 Hun, 344; *Barnes* v.

*Mott*, 64 N. Y. 397, 402; *Bangs* v. *Strong*, 7 Hill, 250; *Wadsworth* v. *Lyon, N. Y.*, 18 Weekly Dig. 74.) It is immaterial what injury the defendant sustained by such interference with her rights as surety; it discharged the defendant from her liability, even if she sustained no injury. (*Calvo* v. *Davies*, 73 N. Y. 216; *Miller* v. *McCann*, 7 Paige, 451; *Paine* v. *Jones*, 76 N. Y. 274, 278; *Grant* v. *Smith*, 46 id. 93.)

*Josiah T. Marean* for respondents. When the strict relation of principal and surety exists, which is only in cases where a third party undertakes, or pledges his property in some form to a creditor, in terms that the principal debtor shall perform his contract, or becomes jointly bound with him, any alteration of the contract by agreement with the principal discharges the surety upon purely legal grounds. (*Dewey* v. *Read*, 40 Barb. 16; Brandt on Suretyship, 445.) Where the technical relation of principal and surety does not exist, but where as a result of dealings by the debtor with third persons, to which the creditor is not privy, something analogous to that relation is created, the case is governed by the principles of equity. (*Barnes* v. *Mott*, 64 N. Y. 402.) The plaintiffs, being unable to cede to the defendant a presently due mortgage on the land, the defendant has a right to a deduction from the bond of the value of the land in excess of the sum paid at the time of the extension, precisely as though the land had been released, and that is the utmost limit of her right. (*Cheeseborough* v. *Millard*, 1 Johns. Ch. 414; *Guion* v. *Knapp*, 6 Paige, 35; *James* v. *Hubbard*, 1 id. 228; *Ingalls* v. *Morgan*, 10 N. Y. 188; 2 Washburn on Real Property, 572; *Johnson* v. *Williams*, 4 Minn. 268; *Gaskill* v. *Sine*, 13 N. J. Eq. 401; *Vose* v. *F. R. R. Co.*, 50 N. Y. 369; *Chester* v. *B'k of Kingston*, 16 id. 336; *Ingalls* v. *Morgan*, 10 id. 187.) In cases where the person or land secondarily liable has been held completely discharged, are all cases where either some person primarily liable or some land or fund sufficient to have paid the debt have been released. (*Barnes* v. *Mott*, 64 N. Y. 397; *B'k of Albion* v. *Burns*, 46 id. 170; *Chester* v. *B'k of Kingston*, 16 id. 336; *Ingalls* v.

*Morgan*, 10 id. 188; *Thayer* v. *Manly*, 73 id. 308.) Where, as in this case, the creditor is not privy to the transaction out of which the right of subrogation arose, notice must be brought home to him of the existence of such right before the effect claimed by the defendant for the extension in question can be insisted upon. (*Cheeseborough* v. *Millard*, 1 Johns. Ch. 409; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Barnes* v. *Mott*, 64 id. 402; *Calvo* v. *Davies*, 73 id. 21.)

FINCH, J. The trial court held, that the extension by plaintiffs' testator of the time of payment of defendant's bond and mortgage, by a valid agreement with her grantee, who had taken a deed subject to the mortgage but without assuming its payment, operated to discharge the defendant wholly from liability. This conclusion rested upon the rule applicable to principal and surety, which forbids the former to change the essential terms of the contract without the consent of the latter, except at the peril of the surety's complete discharge. In most of these cases the courts have refused to enter upon the inquiry whether the surety was damaged or not by the change, and the justification of such refusal ordinarily lies in the fact that the surety is bound only by the contract which he made, and not by the new and substituted one which alone can be legally enforced. (*Ducker* v. *Rapp*, 67 N. Y. 473.) But the present is not a case of principal and surety in the strict and technical definition of such relation; and upon that fact the General Term founded a different view of the rights of the parties, and reversed the decision of the Special Term on appeal. Conceding that, by the conveyance subject to the mortgage, the land became the primary fund for the payment of the mortage debt, and that the grantor in defense of his liability on the bond had the right to pay the mortgage debt and be subrogated to the remedies of the creditor, and so could enforce payment out of the land to the extent of its value (*Johnson* v. *Zink*, 51 N. Y. 336; *Flower* v. *Lance*, 59 id. 603), the General Term nevertheless held, affirming the authority of *Penfield* v. *Goodrich* (10 Hun, 41), that the mortgagor and grantor was all the time

the principal debtor, and the grantee only became such when he covenanted to pay the mortgage debt and assumed it as a personal liability. We do not approve of this conclusion, or the result to which it leads, and deem it our duty to affirm the decision of the Special Term, although not approving the doctrine upon which it rests, except with some necessary qualification.

While, as we have said, no strict and technical relation of principal and surety arose between the mortgagor and his grantee from the conveyance subject to the mortgage, an equity did arise which could not be taken from the mortgagor without his consent, and which bears a very close resemblance to the equitable right of a surety, the terms of whose contract have been modified. We cannot accurately denominate the grantee a principal debtor, since he owes no debt, and is not personally a debtor at all, and yet, since the land is the primary fund for the payment of the debt, and so his property stands specifically liable to the extent of its value in exoneration of the bond, it is not inaccurate to say that as grantee, and in respect to the land, and to the extent of its value, he stands in the relation of a principal debtor, and to the same extent the grantor has the equities of a surety. This follows inevitably from the right of subrogation which inheres in the original contract of sale and conveyance. It is a definite and recognized right, which, in the absence of an express agreement, will be founded upon one implied. (*Gans* v. *Thieme*, 93 N. Y. 232.) When the mortgagor in this case sold expressly subject to the mortgage, remaining liable upon his bond, he had a right as against his grantee to require that the land should first be exhausted in the payment of the debt. Presumably the amount of the mortgage was deducted from the purchase-price, or at least the transfer was made and accepted in view of the mortgage lien. Seller and buyer both acted upon the understanding that the land bound for the debt should pay the debt as far as it would go, and their contract necessarily implied that agreement. Through the right of subrogation the vendor could secure his safety, and that right could not be invaded with impunity. It

was invaded. When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation. He suspended its operation beyond the terms of the mortgage. He put upon the mortgagor a new risk not contemplated, and never consented to. The value of the land, and so the amount to go in exoneration of the bond,' might prove to be very much less at the end of the extended period than at the original maturity of the debt, and the latter might be increased by an accumulation of interest. The creditor had no right thus to modify or destroy the original right of subrogation. What he did was a conscious violation of this right, for the fact that he dealt with the grantee for an extension of the mortgage shows that he knew of the conveyance, and that it left the land bound in the hands of the grantee. Knowing this he is chargeable with knowledge of the mort-' gagor's equitable rights, and meddled with them at his peril. But it does not follow that the vendor was thereby wholly discharged. · The grantee stood in the *quasi* relation of principal debtor only in respect to the land as the primary fund, and to the extent of the value' of the land. If that value was less than the mortgage debt, as to the balance he owed no duty or obligation whatever, and as to that the mortgagor stood to the end, as he was at the beginning, the sole principal debtor. From any such balance he was not discharged, and as to that no right of his was in any manner disturbed. The measure of his injury was his right of subrogation, and that necessarily was bounded by the value of the land. The extension of time, therefore, operated to discharge him only to the extent of that value. At the moment of the extension his right of subrogation was taken away, and at that moment he was discharged to the extent of the value of the land, since the extension barred his recourse to it, and once discharged he could not again be made liable. From that moment the risk of future depreciation fell upon the creditor who by the extension practically took the land as his sole security to the extent of its then value, and assumed the risk of getting that value out of it in the

future. But the Special Term went further and held that the mortgagor was absolutely discharged by the extension. That might or might not be, and depended upon the question whether the value of the land equaled or fell below the debt. For conceding the general rule that the surety is discharged utterly by a valid extension of the time of payment, and that the mortgagor stands in the position and has the rights of a surety, it must be steadily remembered that he can only be discharged so far as he is surety; that he holds that position only up to the value of the land; and beyond that is still principal debtor without any remaining equities.

In this case the evidence is not before us. We have only the pleadings and the findings of the court. They do not show directly that the value of the land at the date of the extension equaled the mortgage debt. But two things go far to justify such an inference. No claim that the value was less, and that the surety was only partially discharged appears to have been made on the trial. There was no request for such a finding, and the case seems to have been heard on the assumption that the value equaled the amount of the mortgage debt. But a very significant fact is found by the trial court. The grantee obtained the extension complained of by paying upon the mortgage the sum of $500 of principal and $87 of accrued interest. He was under no obligation to make this payment or procure the extension. The act is unexplainable except upon the theory that he deemed the land worth more than the mortgage, and that his interest was to pay off the incumbrance. It is an act which speaks as plainly as if he had said and the court had found that he had said that the land exceeded in value the amount of the mortgage. Every legitimate inference which the findings warrant, must be drawn to sustain the judgment founded upon them. In *Kellogg* v. *Thompson* (66 N. Y. 88) it was said that where the evidence given on the trial was not contained in the case, we must assume not only that the facts proved were sufficient to sustain the findings, but also any additional findings necessary to sustain the conclusion of law not in conflict with the affirmative facts found. That, in the

present case, the value of the land equaled the amount of the mortgage debt, is a fair inference from the facts which were found, is strengthened by the course of the trial so far as the absence of any such objection is concerned, and under the rule to which we have referred must be assumed in support of the judgment of the Special Term.

The judgment of the General Term should be reversed and that of the Special Term affirmed with costs.

All concur.

Judgment accordingly.