FOLLETT and PARKER, JJ., concurred.

Judgment affirmed, with costs, and with leave to withdraw the demurrer and answer on payment of costs and disbursements of the appeal and costs in the court below.

---

BAPTIST M. COMER and Others, Respondents, v. ALEXANDER MACKEY, Appellant.

*Action tried by the court — appeal upon the judgment roll only — assumptions as to the evidence — necessity of findings justifying the judgment — account stated — estoppel from right to surcharge, by reason of acquiescence.*

Upon an appeal in an action tried by the court or a referee, where no case is made containing the evidence, but the appeal is based solely upon exceptions contained in the judgment roll, and the findings of fact do not sustain the conclusions of law, it may not be assumed that there was evidence justifying other findings which would have sustained such conclusions, but, on the contrary, it is to be assumed that there was no such evidence, and when the conclusions of law have been properly excepted to, the judgment may not be sustained.

Hence, upon an appeal upon the judgment roll only, in an action tried by the court or a referee, the General Term is to consider whether such facts were found as justified the judgment entered, and not whether such facts might not have been found as would have justified such judgment.

When a person having a business arrangement with a firm, receives and retains without objection a series of statements of account rendered to him by the firm, and the firm is dissolved and a new firm succeeds to its business, the members of which in good faith, relying upon the statements of account so previously rendered, change their position by allowing certain parties to retire, and by settling with them upon the basis of such accounts, by reason of the apparent acquiescence and consent to their correctness by the person to whom they were rendered, that person will not thereafter be permitted to impeach and surcharge those accounts for the purpose of charging the new firm with any error which may have inadvertently crept into the accounts prior to the dissolution of the old firm, and been permitted to pass unquestioned through his own negligence in not informing himself of the condition of the accounts which were rendered to him from time to time.

APPEAL by the defendant, Alexander Mackey, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the city and county of New York on the 9th day of January, 1891, upon the report of a referee.

*J. A. Shoudy,* for the appellant.

*W. M. Rosebault,* for the respondents.

VAN BRUNT, P. J.:

This action was brought upon an alleged account stated. The answer, while admitting the copartnership of the plaintiffs as alleged, denied that any account had been stated between the parties, but admitted that an account had been rendered by the plaintiffs upon the day upon which it was alleged the account had been stated showing the balance claimed, and alleging that he had not then the means of ascertaining whether the same was correct or not, and he denied that he ever assented to the correctness thereof. The answer further set up various defenses and counterclaims by which the defendant claimed to surcharge the said account stated for errors in respect to interest, and demanded an accounting, claiming a large balance to be due. To the counterclaim a reply was duly interposed.

The issue thus raised having been referred to a referee to hear and determine after the trial, the referee reported in favor of the plaintiffs for an amount much below that which was claimed in the complaint, and from the judgment thereupon entered this appeal is taken by the defendant.

No evidence is presented, and this appeal must be considered, therefore, upon the judgment roll alone, and the only question which it is necessary to consider is whether the findings of fact made by the referee support his conclusions of law.

It is claimed upon the part of the respondent that every presumption exists in favor of the judgment, and since the appellant has failed to print the evidence, or any part of it, it must be assumed that it would not have benefited him to do so, and that the record not only sustains the findings of fact actually found, but is also sufficient to sustain any additional findings required to support the conclusions of law, unless those conclusions are in conflict with the findings of fact. And he cites the cases of *Kellogg* v. *Thompson*

(66 N. Y. 88); *Murray* v. *Marshall* (94 id. 616), and *Gardiner* v. *Schwab* (110 id. 650). Those cases pointedly sustain the contention of the respondent. Our attention is, however, called by the appellant to the case of *The Rochester L. Co.* v. *Stiles & Parker P. Co.* (135 N. Y. 209), in which case the court held that upon an appeal in an action tried by the court or a referee, where no case is made containing the evidence, but the appeal is based solely upon exceptions contained in the judgment roll, and the findings of fact do not sustain the conclusions, it may not be assumed that there was evidence justifying other findings which would have sustained such conclusions, but, on the contrary, it is to be assumed that there was no such evidence, and when the conclusions of law have been properly excepted to, the judgment may not be sustained — a construction of the practice which seems to us absolutely contrary to that which was laid down in the cases above cited, but which also seems more consistent with reason, because it is evidently the duty of the party succeeding to see to it that he has findings of fact sufficient to support the judgment; and if he does not, he is exposed to the perils of a reversal upon appeal, based solely upon exceptions to the legal conclusions, as suggested by the court. If any other rule should be sustained, then very rarely, if ever, would it be sufficient for a defeated party to appeal without a case, as it is nearly always possible to presume the existence of other facts which were not actually found, but which, if found, would uphold the judgment. The learned judge who wrote the opinion in the case last cited seems to recognize the fact that a new departure was being made, because he says in his opinion: " The law upon this matter of practice by some inadvertence has fallen into some confusion and conflict, and it is time that the practice should be finally settled," although it appeared by the cases first above cited to be distinctly settled in a different way.

Taking, however, the last construction of the court of last resort as our guide in the decision of the questions involved upon this appeal, we are to consider whether such facts were found as justified the judgment entered, and not whether such facts might not have been found as would have justified such judgment.

The referee finds that on the 6th of November, 1868, an agreement was entered into between the firm of Dowley, Corners & Co. on the one part, and the defendant, Alexander Mackey, and one Mul-

ler on the other part, providing for a business adventure in which both parties should be interested, Dowley, Corners & Co. to furnish the refinery therein mentioned, and capital sufficient for working the same, and the defendant and Muller to furnish their patents and entire time and services; all outlay of money connected with the property and the working thereof to be borne by the business, except in the case of additions in the shape of entirely new improvements, the interest on a mortgage of $20,000 then on the premises to be borne by the business, and no rent or commissions upon purchases or sales to be charged unless actually paid out, and profits and losses to be divided or borne at the end of each year in the proportion of two-thirds to or by Dowley, Corners & Co., and one-third to or by the defendant and Muller. The agreement was to continue in force for three years from its date, at the end of which time Dowley, Corners & Co. were to have the privilege of extending it to the expiration of the patents, or for a shorter period, by increasing the interest of defendant and Muller to four-tenths of the profits.

At the time of the execution of this contract the refinery was being carried on under a previous arrangement between the same parties. It was continued for the period of three years, ending the 6th day of November, 1871. It was further continued thereafter with no definite extension or new contract. But, in fact, from and after the 1st day of January, 1872, the share of the defendant in profits and losses was increased from one-sixth to one-fifth.

In 1875 the firm of Dowley, Corners & Co. was dissolved, and a new firm known as Corner Bros. & Co., consisting of the plaintiffs in this action, was thereupon organized and succeeded to the general assets, business and liabilities of Dowley, Corners & Co. The members of the old firm who were not members of the new firm retired and were settled with on the footing of the books and accounts as they then existed. Up to the time of such succession in 1875, Dowley, Corners & Co., and from the time of their succession Corner Bros. & Co., had rendered two statements to the defendant on or about the first day of January in each year. The one was a summary of the refinery business for the previous year and exhibited the balance of profit and loss and the share therein of each of the parties. The other was a detailed personal account of the defendant with the

firm for the same previous year, and included his share of the profit and loss from the refinery account, and exhibited the balance to his credit or debit on such first day of January.

These personal accounts were continuous, carrying forward the balance from each year to the succeeding year. Both sets were regularly received and retained by the defendant without objection.

After the said succession of plaintiffs the refinery business was continued by the former in conjunction with the defendant and for a part of the time with Muller upon the same footing and without any new definite arrangement between them and the defendant or Muller until on or about the 15th day of October, 1880, when it was finally discontinued in accordance with notice to that effect given by Corner Bros. & Co. to the defendant. No objection to the discontinuance was then made by the defendant, who, on the contrary, had expressed his opinion of the inadvisability of proceeding without substantial alterations and improvements of machinery.

In making up the several refinery accounts, interest was reckoned not only upon the mortgage, but also upon what were known as the working and improvement accounts, and was charged or credited to the business and became an element of profit or loss stated for the apportionment between the parties interested in the business at the end of each year. No part of the interest upon the working or improvement accounts was paid or received by either Dowley, Corners & Co., or their successors, the plaintiffs, the same being computed in their favor or against them, as the case might be.

The principal of the mortgage of $20,000 mentioned was paid off in installments. No part of such principal was ever charged to the business or in anywise paid by the defendant; nor does it appear that interest was ever fully realized by the plaintiffs upon this principal.

There was no effort on the part of the plaintiffs or their predecessors to mislead the defendant respecting the character or method of the accounts, nor to withhold from him access to books or other means of information in regard thereto. He had mislaid his duplicate of the original contract, but did not seek to otherwise inform or remind himself of his rights thereunder. At the same time he was not an expert accountant and his main reliance was upon the accuracy of the plaintiffs and their predecessors.

In the foregoing statement of the findings of fact of the referee, it has not been considered necessary to refer to figures, because the question involved upon this appeal does not relate to amounts, but to the principles upon which the referee has based his conclusions of law.

As conclusions of law, the referee found that under the contract interest was not chargeable to the business on the working account, nor on the improvement account, although in this last particular there may be room for doubt, inasmuch as the contract failed to make it the duty of either of the parties to supply improvements not chargeable to expense account. But interest was at all times chargeable to the business upon the $20,000 represented by the mortgage, and without regard to payments of principal thereof by Dowley, Corners & Co., or by the plaintiffs.

The referee also found, as conclusions of law, that "the discontinuance of the business by the plaintiffs in the year eighteen hundred and eighty was without fault on their part such as to subject them to liability to the defendant for either penalty or damages. Moreover, the action of the defendant preliminary to and concurrent with the discontinuance, left him no right of subsequent complaint."

The referee also found, as conclusion of law, that "in view of the receipt by the defendant of the series of accounts rendered to him by Dowley, Corners & Co., and the absence of objection by him thereto, and of the dissolution of the firm and the succession to the same by the plaintiff's firm of Corner Brothers and Company, with material changes in membership and proportionate rights, and without notice that the accounts were in anywise unacceptable to the defendant, it would be inequitable to permit the defendant to now impeach these accounts for the purpose of charging the plaintiffs with a balance to defendant's credit at the time of the succession larger or other than the balance then appearing in his favor by the accounts so theretofore rendered to him."

And, further, that the sums charged by the plaintiffs upon the working and improvement account were erroneously charged; and that notwithstanding the great delay of the defendant in objecting thereto, nevertheless correction of the errors can now properly be made for the period since the 1st of January, 1875, that being the date when the plaintiffs succeeded to the firm of Dowley, Corners & Co.

The appellant, upon this appeal, contends that the referee erred in deciding that the appellant could not question the erroneous charges for interest made against him prior to January, 1875, and in holding that interest upon the $20,000 mortgage which had existed upon the premises was properly chargeable to the business after it was paid off.

The claim is made that the defendant, not being guilty of deception, either intentional or otherwise, could not be estopped from questioning the state of the accounts, and that if the plaintiffs desired to estop him because of the changes in their relations to their previous copartners, they should at least have informed him of their precise condition, and of what they proposed to do; but as they became successors of the prior firm without either consulting the defendant or giving him notice of the change, and they acquired the benefits arising from the succession, they must assume as well its burdens. In support of these propositions, our attention is called to the cases of *Welsh* v. *German Amer. Bank* (73 N. Y. 424); *Shipman* v. *Bank of State of N. Y.* (126 id. 318), and *Frank* v. *Chemical Bank* (84 id. 209).

It is claimed that these cases go much further than is necessary to sustain the defendant's position in this case. An examination of the cases, however, seems to show that they have no application whatever to the one at bar. They proceed upon the principle that a depositor owes no duty to a bank requiring him to examine his pass book and returned checks with a view to the detection of forgeries in the indorsements upon such checks; and it was held that he has a right to assume that his bank, before paying his checks, will ascertain the genuineness of the indorsement. The depositor has no means of ascertaining the genuineness of the indorsement before the bank pays out money upon the order of the depositor. It is the bank's duty to ascertain whether or not it is paying the proper person, and it cannot shift that burden upon the shoulders of the depositor. But a very different question would arise if the signature of the depositor to the check upon which the money had been paid was claimed to be a forgery. In that case the depositor would be bound to know whether or not he had drawn the check in question.

In the case at bar, it appears that the plaintiffs, in entire good faith, relying upon the statements of account which had been fur-

nished to the defendant as to the previous business which had been conducted, changed their position, allowed certain parties to retire, and settled with them upon the basis of such accounts; and it certainly would be a hardship now to compel them to pay the penalty arising from the defendant's negligence in not informing himself of the condition of the accounts which were rendered to him from time to time. The business was conducted by the defendant with the plaintiffs after this change in the firm of Dowley, Corners & Co., to Corner Bros. & Co., and the accounts were received from the new firm precisely the same as they had been received from the old.

A very different question would arise had not the plaintiffs been placed in the position they now occupy by reason of the apparent acquiescence and consent to the correctness of the accounts by the defendant. Accounts stated undoubtedly may be surcharged for fraud or mutual mistake. But where it is inequitable that such surcharge should be allowed because of the change in the position of one of the parties to the account, in view of the acquiescence of the other, no such right exists.

It may indeed very well be questioned whether the present plaintiffs are responsible for all the indebtedness of the firm of Dowley, Corners & Co., as a firm, simply because they became their successors and took their assets.

We see no reason to differ from the referee in his conclusion that the plaintiffs are not responsible for any errors that may have inadvertently crept into the accounts prior to the dissolution of the old firm.

In respect to the interest upon the $20,000, it seems to us that when the plaintiffs paid that mortgage they became subrogated to the right to receive the interest on the $20,000, which, under the agreement between the parties, was to be borne by the business. It is true that the agreement provided that interest on the mortgage of $20,000 then on the premises was to be borne by the business, and that the mortgage was satisfied by the payment out of their own pockets by the plaintiffs of its amount. But, as already suggested, they clearly became subrogated to the right to receive interest as reserved in the mortgage upon the $20,000 advanced by them, and charge it to the business.

There seems to have been no error committed by the referee which calls for a reversal of the judgment appealed from, and the same should be affirmed.

FOLLETT and PARKER, JJ., concurred.

Judgment affirmed.