(160 App. Div. 394)

METZGER v. NOVA REALTY CO. et al.

(Supreme Court, Appellate Division, First Department. January 23, 1914.)

MORTGAGES (§ 283*)—TRANSFER OF MORTGAGED PROPERTY—LIABILITY OF MORT-
        GAGOR—DISCHARGE.

An agreement between a grantee of land subject to a mortgage and the mortgagee, made without the mortgagor's knowledge or consent, which, after reciting that the mortgagee had an opportunity to invest the funds in another security and that the grantee did not desire to pay the debt and had requested an extension of time of payment, extended the time of payment for two years, but provided that nothing therein contained should impair the security then held for the debt or any condition or agreement contained in the bond and mortgage, discharged the original mortgagor from liability for the payment of the debt, where the property was worth more than the amount of the debt and all prior liens at the maturity of the debt, since the mortgagor stood as a surety, and the provision that the extension should not impair the security did not preserve the mortgagee's rights as against the mortgagor, as to have that effect the agreement must be clear, unambiguous, and express.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 756–758; Dec. Dig. § 283.*]

Appeal from Trial Term, New York County.

Action to foreclose a mortgage by Joseph Metzger against the Nova Realty Company and others. From so much of the judgment as di-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rects a deficiency judgment against the defendant named, defendants. appeal. Judgment modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Davis, Symmes & Schreiber, of New York City (William B. Symmes, Jr., of New York City, of counsel), for appellant.

Arnstein, Levy & Pfeiffer, of New York City (Samuel Levy, of Schenectady, of counsel, and Reuben Rodecker, of New York City, on the brief), for respondent.

CLARKE, J. April 30, 1907, the Nova Realty Company executed and delivered to the Jumel Realty & Construction Company its bond in the penal sum of $23,000, to pay $11,500 on the 1st day of May, 1910, and its mortgage for $11,500, bearing date the same day, on a piece of property on Claremont avenue. On December 7, 1908, the Jumel Realty & Construction Company assigned and transferred the bond and mortgage to the plaintiff. On March 15, 1910, the Westown Realty Company had by mesne conveyances become the owner of premises subject to the mortgage. On said day the plaintiff entered into an agreement in writing with the Westown Realty Company whereby the plaintiff extended the time for the payment of the balance of said principal sum then unpaid to the 1st day of May, 1912. The said agreement contains a provision as follows:

"Nothing herein contained shall impair the security now held for said debt, or any condition or agreement contained in said bond and mortgage, which bond and mortgage the party of the second part hereby ratifies and confirms as modified by this agreement."

The court has found, as a matter of fact, that said agreement of extension was made without the knowledge of the defendants Nova Realty Company and Jumel Realty & Construction Company. It appears also that, at the date when the extension agreement was executed and the date when the bond and mortgage originally fell due, the market value of the premises covered by the mortgage was $58,650, which exceeded the amount of the mortgage debt and all prior liens by the sum of $8,150. The question presented is whether said clause preserved to the plaintiff the personal liability of the Nova Realty Company, notwithstanding the extension of the time of payment without its knowledge or consent.

In Murray v. Marshall, 94 N. Y. 611, Finch, J., said:

"While * * * no strict and technical relation of principal and surety arose between the mortgagor and his grantee from the conveyance subject to the mortgage, an equity did arise which could not be taken from the mortgagor without his consent, and which bears a very close resemblance to the equitable right of a surety, the terms of whose contract have been modified. We cannot accurately denominate the grantee a principal debtor, since he owes no debt and is not personally a debtor at all, and yet, since the land is the primary fund for the payment of the debt, and so his property stands specifically liable to the extent of its value in exoneration of the bond, it is not inaccurate to say that as grantee, and in respect to the land, and to the extent of its value, he stands in the relation of a principal debtor, and to the same extent the grantor has the equities of a surety. This follows inevitably from the right of subrogation which inheres in the original contract of sale and con-

veyance. * * * When the mortgagor in this case sold expressly subject to the mortgage, remaining liable upon his bond, he had a right, as against his grantee, to require that the land should first be exhausted in the payment of the debt. Presumably the amount of the mortgage was deducted from the purchase price, or at least the transfer was made and accepted in view of the mortgage lien. Seller and buyer both acted upon the understanding that the land bound for the debt should pay the debt as far as it would go, and their contract necessarily implied that agreement. Through the right of subrogation the vendor could secure his safety, and that right could not be invaded with impunity. It was invaded. When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation. He suspended its operation beyond the terms of the mortgage. He put upon the mortgagor a new risk not contemplated, and never consented to. The value of the land, and so the amount to go in exoneration of the bond, might prove to be very much less at the end of the extended period than at the original maturity of the debt, and the latter might be increased by an accumulation of interest. The creditor had no right thus to modify or destroy the original right of subrogation. * * * The measure of his injury was his right of subrogation, and that necessarily was bounded by the value of the land. The extension of time, therefore, operated to discharge him only to the extent of that value. At the moment of the extension his right of subrogation was taken away, and at that moment he was discharged to the extent of the value of the land, since the extension barred his recourse to it, and once discharged he could not again be made liable."

In National Park Bank v. Koehler, 204 N. Y. 174, 97 N. E. 468, reversing this court (137 App. Div. 785, 122 N. Y. Supp. 490), Ingraham, P. J., dissenting, where the question was as to the liability of an accommodation indorser on a note where new notes had been given, but the original note had been held as collateral and protested with notice on its due date, Gray, J., said:

"It is a rule, long recognized, that an accommodation indorser, or surety, is entitled to have the engagement of the principal debtor preserved, without variation in its terms, and that his assent to any change therein is essential to the continuance of his obligation. The reason of the rule is that his right must not be affected, upon the maturity of the indebtedness, to make payment and, by subrogation to the creditor's place, to at once proceed against the principal debtor to enforce repayment. * * * The creditor may arrange with his debtor in any way, which does not result in effecting either of these results. He may take, as collateral to the old note, new security, or other notes, and, if time is not given to the debtor, the indorser, or surety, will not be discharged. To prevent such a result, the agreement must expressly reserve all the remedies of the creditor against the indorser, or surety, in which case the latter will be in a position to pay immediately and then to proceed against the principal debtor. * * * How, then, is the agreement to be interpreted? It is not conditioned upon the defendant's consent to the arrangement, which would have left him free to proceed upon the old note by taking it up and, rejecting the new notes, to enforce repayment against the maker. Its effect was to preclude the plaintiff from maintaining any action upon the note against the maker, for the company could have objected that, under their agreement, it was to be held as collateral until the new notes were paid. Thus the right of action was necessarily suspended during the interval. * * * If the parties actually had in mind a reservation of the right of action against the defendant, if they intended that the transaction was subject to his consent, it would have been easy to have said so. * * * He was entitled to insist that, within the strict application of the rule in such cases, he was released from his obligation by an agreement of the creditor with the principal debtor, to which he had not consented and which extended the latter's time of payment of its indebtedness."

In Spies v. National City Bank, 174 N. Y. 222, 66 N. E. 736, 61 L. R. A. 193, Parker, Ch. J., said:

"The learned counsel for the appellant insists that, even if it be true that the legal effect of the assignment of the judgment and the entry of the order of subrogation operated to discharge the maker from all liability on the note, nevertheless the effect of the holder's reservation of his rights against the indorser permits recovery from him on the note. * * * If his contention be well founded, the exception would so operate as to destroy in large measure the value of the general rule, which is well grounded in reason as well as authority, for in many cases the holder could deprive the indorser of his remedy over against the maker and still pursue the holder's remedy against the indorser by a simple agreement with the maker that the holder's rights against the indorser should be reserved."

The court proceeded to say that:

"He cites in support of his position the following cases in this court: Morgan v. Smith, 70 N. Y. 537. * * * No such question was involved. * * * Calvo v. Davies, 73 N. Y. 211 [29 Am. Rep. 130], was an action to enforce a mortgage upon premises subsequently sold to a grantee, who in his deed assumed its payment and later entered into an agreement with the mortgagee to extend the time of payment without the consent of his grantor. Held, that the effect of the agreement was to discharge the grantor and mortgagor from liability for the mortgage debt. * * * That rule has never been applied to an indorser on a promissory note by this court, and never can be, when, as in this case, there is to be found in the facts and circumstances surrounding the transaction no opportunity to treat the release of the maker as having been made subject to the consent of the indorser."

A comparison of the alleged reservation clauses in Calvo v. Davies with that in this appeal shows, I think, that they are essentially alike, and of that clause Judge Andrews said:

"The 'understanding' that the mortgage should in all other respects remain unaffected by the agreement, except as to the time of payment, emphasizes the one purpose of the agreement, viz., to extend the time of payment. The other stipulations in the mortgage were to remain in force as if the agreement extending the time had not been made. It would be a forced and unnatural construction to hold that the parties designed to reserve for the creditor a right to proceed at once against Davies, which would enable the plaintiff to defeat the sole purpose of the agreement."

In Winslow v. Stoothoff, 104 App. Div. 28, 93 N. Y. Supp. 335, the extension agreement contained the following provision:

"Nothing herein contained shall invalidate any of the securities now held for said debt, or impair any condition in said bond and mortgage contained."

Bartlett, J., said:

"The extension given to the Winslows would have operated to release Stoothoff from his obligation as mortgagor to the extent of the value of the land, if that extension had been given without Stoothoff's consent. Murray v. Marshall, 94 N. Y. 611; Antisdel v. Williamson, 165 N. Y. 372 [59 N. E. 207]. The consent to the extension was obviously obtained to prevent this result."

Under these authorities, I am impressed with the strength of the appellant's case. I do not think that the language of the extension agreement clearly refers to the preservation of any rights as against the original mortgagor, but that the whole agreement shows how anxious the parties were for an extension:

"Whereas an opportunity has presented itself to the said party of the first part to invest the funds in another security, and whereas the party of

the second part, being the owner of the premises covered by said mortgage, does not desire to pay said bond and discharge said mortgage and has requested said party of the first part to extend the time of payment thereon as hereinafter provided."

The clause here relied on means, it seems to me, that, as between themselves, the original instrument shall stand unimpaired and preserved with all its terms and incidents except as to the extended time of payment. It seems to me that it would be a forced and strained construction to hold the original mortgagor on this point under those clauses. That said original mortgagor stood as a surety is established by Murray v. Marshall, supra, and the effect of the decisions in the Koehler and Spies Cases, supra, with their examination of the authorities here relied on by the respondent, shows that the Court of Appeals deliberately repudiated the doctrine of an unknown and unconsented-to extension, reserving the right of recovery as against the original indorser or surety. To have that effect the clause must at least be clear and unambiguous and express. It appears that at the time of the extension this property had a value of upwards of $8,000, over all the liens thereon, so it appears affirmatively that the appellant was injured by the extension.

The judgment should be modified by striking out so much thereof as provides for a deficiency judgment against the Nova Realty Company, with costs to the appellant. All concur.

Judgment modified as stated in opinion, with costs to appellant. Settle order on notice. All concur.