Jesse Adler, Respondent, v. Emil Berkowitz and Others, Defendants, Impleaded with Rose Gast, Appellant.

Second Department, March 21, 1930.

*Louis Joffe* [*Hyman Finkelson* with him on the brief], for the appellant.

*Jacob A. Freedman* [*Irving C. Maltz* with him on the brief], for the respondent.

Tompkins, J. On March 11, 1926, the appellant, Rose Gast, and her husband, Philip (who was not served in this action), gave to one Pensak a bond and mortgage to secure the payment of the sum of $29,000. On the 28th day of June, 1927, the mortgaged premises were conveyed by the appellant Gast to defendant Emil Berkowitz, who took title to the said premises subject to the said mortgage but who did not assume and agree to pay the debt. The plaintiff is the assignee of said bond and the mortgage which is subject to a first mortgage in the sum of $25,000. The bond provided that the whole of the principal sum should become due at the option of the mortgagee after default in the payment of interest for thirty days or after default in the payment of any installment of principal for thirty days, or after default in the payment of any tax or assessment for thirty days after notice and

demand. The provisions of the mortgage respecting a default differed from those in the bond in that the mortgage provided that the whole of the principal sum shall become due after a default in the payment of any installment of principal for twenty days, or after default in the payment of any installment of interest for twenty days. On the 25th day of July, 1928, an installment of principal and interest amounting to $426.35 became due under the terms of the mortgage, the period of grace provided for by the mortgage expired August 14, 1928, and there was nothing in the mortgage giving the mortgagee any option in the matter. "The whole of said principal sum shall become due after default in the payment of any installment of principal * * * or * * * of interest for twenty days" is the declaration of the mortgage. The installment due on July 25, 1928, was paid by the owner of the equity of redemption on August 20, 1928, and was accepted by the plaintiff, and thereby the mortgage was reinstated and its terms modified and the time for payment extended without the consent or knowledge of appellant, Rose Gast, at a time when the premises were concededly worth enough to pay all incumbrances thereon, and her claim is that thereby she was released from her obligation on the bond. The proofs on the trial showed that thereafter, and prior to the commencement of this action, the premises depreciated in value to the extent of about $7,000.

The respondent's claim is that, under the thirty days' grace clause in the bond, the payment of the installment on August twentieth was timely, and that there was no default on the part of the owner of the equity of redemption, and these claims present the question as to which of the two instruments, the bond or the mortgage, with their inconsistent provisions, controls. If the bond and the mortgage are to be read together, as the plaintiff contends they should be, and the provisions in the bond as to the thirty-day period are to control, then there was no default, inasmuch as the installment was paid before the thirty-day period expired. If, because of the discrepancy between the terms of the mortgage and those of the bond, it shall be held that the terms of the bond control as to the mortgage, there was then no default with respect to the payment of the installment due on July twenty-fifth. On the other hand, if the grace period of twenty days stated in the mortgage is controlling, then there was a default at the expiration of twenty days after July 25, 1928, and by virtue of the terms of the mortgage it became due, regardless of any option or election on the part of the mortgagee, and a reinstatement of the mortgage thereafter and a modification of its terms and an extension of time by the mortgagee without the consent of the mortgagor, Gast, at a time when the

premises were worth enough to discharge the mortgage obligation in full, operated as a release of the mortgagor, Gast, from her obligation on the bond. Ordinarily, of course, the terms of the bond control, it being the principal obligation, and where there are discrepancies between the terms of the mortgage and those of the bond secured thereby, the terms of the bond are generally controlling, inasmuch as the debt is the principal thing and the mortgage only a security; but the case at bar differs in principle from this general rule in that defendant Berkowitz, when he purchased the premises from the appellant, Gast, did not assume or agree to pay the principal debt, but took the premises subject only to the mortgage, and thereafter the appellant, Gast, stood in the position of surety with respect to the mortgage debt to the extent of the value of the real property up to the time of the reinstatement of the mortgage and the modification of its terms, and the extension agreement made without her consent.

In the case of *Rothschild* v. *Rio Grande Western R. Co.* (84 Hun, 103; affd., 164 N. Y. 594) the court, in holding that, where there are inconsistent provisions with reference to the method of payment in a bond and in the mortgage, the bond controls, said (p. 110): " The provisions of the bonds meet the eye of the purchaser and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed. As before stated, these bonds and coupons contain an absolute promise to pay definite sums on specific dates, which implies a right of action in case of failure." In the case before us the recorded mortgage was the instrument which " met the eye," to use the expression of the court in the *Rothschild Case* (*supra*). Berkowitz, when he purchased the property from Gast, did not assume or agree to pay the principal debt and did not see or know the terms of the bond; he knew only the terms of the mortgage and was only liable thereunder, and was only entitled to exercise the privileges granted by the mortgage. He could not have the advantage of the thirty-day clause in the bond and still not be liable on that instrument. There were two distinct instruments. With one of them (the bond), Berkowitz, the owner of the premises, had nothing whatever to do. There is no ambiguity in the terms of the mortgage. Thereunder he was bound to pay installments of principal and interest within twenty days of the due dates, and upon failing to make any such payment he was in default. Unless the appellant, Gast, agreed otherwise, it was the duty of the mortgagee to hold the owner of the equity of redemption to his default, and his failure to do so and his reinstatement of the mortgage and the extension of time given the owner of the equity of redemption, without the consent of the mortgagor, Gast, at a time when the

market value of the premises was more than all the liens and incumbrances on the property, discharged the appellant, Gast, from her obligation on the bond.

In *Osborne* v. *Heyward* (40 App. Div. 78) the Appellate Division of this department held: " It follows that the appellants, who had conveyed the property subject to the payment of this mortgage, occupied the position of sureties to the extent of the value of the land, and were entitled to the rights of sureties." In *Spencer* v. *Spencer* (95 N. Y. 353) the court said: " We recently decided in the case of *Murray* v. *Marshall* [94 N. Y. 611] that the grantor of real estate who had conveyed the same subject to the payment of a mortgage, occupied to the extent of the value of the land the position of, and was entitled to the same rights as a surety, and when the holder of the mortgage had by a valid contract with the owner of the equity of redemption postponed the time for its payment beyond the time therein provided, he had so impaired the equitable rights of the mortgagor as to discharge him from liability to the extent of the value of the land mortgaged. The undisputed evidence in the case shows that the land in question exceeded in value the amount of the mortgage when the agreement of extension was made. We, therefore, think that by treating with the principal debtor in the manner stated, and dealing with the land which constituted the primary fund for the payment of the mortgage debt in such manner as deprived the plaintiff of her right as a surety to resort to it for her indemnity, the defendant has released her from liability, if any existed, for the payment of the mortgage debt. (*Calvo* v. *Davies*, 73 N. Y. 211; *Paine* v. *Jones*, 76 id. 274.) "

In *Feigenbaum* v. *Hizsnay* (187 App. Div. 126) the court said (p. 129): " The only effect of the extension was to release the respondents to the extent of the value of the property at that time; and if it was worth the amount of the indebtedness owing, or more, of course, they were wholly released, but, if worth less, then they still remained liable for the difference between its then value and the amount of the indebtedness. [*Matter of Piza*, 5 App. Div. 181; *Wiener* v. *Boehm*, 126 id. 703; *Cohen* v. *Hecht*, 128 id. 511; *Neukirch* v. *McHugh*, 165 id. 406.] "

In *Matter of Piza* (5 App. Div. 181) the court said (p. 183): " But Steers did not so covenant, and O'Neil's exemption from liability on the bond was limited to the value of the land at the time of the agreement. (*Murray* v. *Marshall*, 94 N. Y. 611.) He was not liable for any deficiency which might arise upon the sale in the foreclosure suit. He was only liable for the difference between the actual value of the land at the time of the agreement and the amount of the mortgage. The risk of future depreciation fell upon the creditor. It is doubtful, therefore, whether the ques-

tion of O'Neil's liability and its extent could have been properly tried in the foreclosure action. Not being liable for any deficiency upon the sale, and his liability, if any, depending upon considerations foreign to an ordinary decree of foreclosure and sale, his being dropped as a party defendant did not substantially prejudice him, or affect his real interests. Whether he is now liable, depends not upon what the property brought at the foreclosure sale, but entirely upon its value at the time of the agreement between the decedent and Steers."

We think that these cases state the rule that should be applied to the case at bar. The respondent challenges the sufficiency of the proof as to the value of the premises at the time of the default and extension.

In the case of *Murray* v. *Marshall* (94 N. Y. 611) the court released the bondsman because of an extension of the mortgage without his consent, and with reference to the value of the property at the time of such extension, stated (p. 617): "No claim that the value was less, and that the surety was only partially discharged appears to have been made on the trial. There was no request for such a finding, and the case seems to have been heard on the assumption that the value equalled the amount of the mortgage debt. But a very significant fact is found by the trial court. The grantee obtained the extension complained of by paying upon the mortgage the sum of $500 of principal and $87 of accrued interest. He was under no obligation to make this payment or procure the extension. The act is unexplainable except upon the theory that he *deemed the land worth more than the mortgage*, and that his interest was to pay off the incumbrance. It is an act which speaks as plainly as if he had said and the court had found that he had said that the land exceeded in value the amount of the mortgage."

In the case now before us, on the question of the value of the property at the time of the extension, on the same theory, we have the proof that the defendant Berkowitz paid the sum of $426.25, an installment of principal and interest due July 25, 1928, and we may assume from that, as the court assumed in the case just cited, that the defendant Berkowitz considered the property worth the amount of the mortgage. We have, however, in this case the admission of the plaintiff, respondent, that the city of New York in 1929 reduced its assessed valuation of the property $7,000 from the amount of the assessment of the previous year. This is some evidence of the depreciation in the value of the property after the default and extension, and, in the absence of any evidence to the contrary, is sufficient when taken in connection with the testimony of the witness Silver, that the property was worth $40,000 at the

time of the default, which was more than enough to pay all of the incumbrances at that time, the principal due on the plaintiff's mortgage having been previously reduced to about $12,000.

We conclude, therefore, that because of the plaintiff's unauthorized extension and modification of the terms of the mortgage with respect to a default in the payment of installments of principal and interest, the defendant, appellant, Gast, is not liable on the bond, and that the judgment appealed from should be modified by striking out the provisions for a deficiency judgment against her, and as so modified affirmed, without costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made.

CARSWELL and SCUDDER, JJ., concur; LAZANSKY, P. J., and HAGARTY, J., dissent, being of opinion that as between appellant and respondent the terms of the bond are controlling, the bond being the evidence of the original indebtedness.

Judgment modified by striking out the provision for a deficiency judgment against defendant, appellant, Gast, and as so modified affirmed, without costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made.

Settle order on notice.