THE SYRACUSE TRUST COMPANY, as Trustee under the Last Will and Testament of JAMES P. OWEN, Deceased, Plaintiff, *v.* FIRST TRUST AND DEPOSIT COMPANY, Successor of THE CITY BANK TRUST COMPANY, and Others, Defendants.

Supreme Court, Onondaga County, July 24, 1931.

*Smith, Seubert & Dolan,* for the plaintiff.

*Thomas Hogan,* defendant in person.

*Love & Lyman* [*Edmund Port* of counsel], for the defendants McCarthy.

*Costello, Cooney & Fearon* [*John Smith* of counsel], for the guardian *ad litem.*

DOWLING, J.   On July 29, 1914, defendant Thomas Hogan executed and delivered to James P. Owen his bond, whereby he bound himself, his heirs, executors and administrators in the sum of $144,000, upon condition that said bond should be void if he, his heirs, executors or administrators should pay to the said James P. Owen the sum of $72,000 on the 1st day of August, 1929, with interest thereon at five per cent per annum.   As collateral security for the payment of said indebtedness, said Hogan, on the same day, executed and delivered to said James P. Owen his mortgage covering the property described in the complaint herein.   Said mortgage contained the same condition as the bond.   In case of default in payment of principal or interest, said Owen was empowered to

sell the mortgaged premises according to law. Said mortgage was recorded in Onondaga county clerk's office, July 30, 1914.

On June 30, 1917, Thomas Hogan conveyed the mortgaged premises to C. James Bennett. On February 2, 1926, said mortgaged premises were transferred to M. Henry McCarthy, Said conveyances were duly recorded in Onondaga county clerk's office. In each instance the property was conveyed subject to the said mortgage. Plaintiff was aware of said transfers at the time thereof and received the interest from said grantees.

On July 27, 1928, M. Henry McCarthy died. His will contained a trust which disposed of said property. Letters testamentary were issued to the City Bank Trust Company and Mary E. McCarthy. First Trust and Deposit Company absorbed City Bank Trust Company and was substituted as executor under said will in its place.

Subsequent to the 29th of July, 1914, James P. Owen died, possessed of said mortgage, and leaving a will naming the Syracuse Trust Company as executor and trustee. Said will was probated and said executor and trustee qualified.

Shortly prior to August 1, 1929, the plaintiff mailed to the executors and trustees of the M. Henry McCarthy estate, a statement of the account of said mortgage, viz.: Principal due August 1, 1929, $72,000; interest payable August 1, 1929, $1,800.

On August 5, 1929, the representatives of the McCarthy estate mailed to the plaintiff a check for $1,800, covering accrued interest on said mortgage to August 1, 1929. Said payment was credited on the bond on August 5, 1929, as interest. Upon the receipt of said interest check, Mr. Beattie, trust officer of the plaintiff, called the attention of Mr. Umbehend, trust officer of the City Bank Trust Company, to the fact that the principal of said mortgage had not been paid, whereupon Mr. Umbehend said to Mr. Beattie that they were not able, at the time, to pay the principal and asked if plaintiff would " ride " along for a time and forbear the commencement of an action for foreclosure — and Mr. Beattie told him that plaintiff would — but would expect them to pay the regular rate of six per cent until such time as they paid the principal. To this proposition Mr. Umbehend gave his assent.

Following this arrangement, the representatives of the McCarthy estate paid to the plaintiff on February 4, 1930, the sum of $2,160, interest on said mortgage from August 1, 1929, to February 1, 1930, which sum was credited as interest upon said bond. On November 28, 1930, the representatives of said estate paid to the plaintiff $2,160, interest on said mortgage to August 1, 1930, which sum was credited as interest upon said bond.

On February 1, 1931, the representatives of the McCarthy estate defaulted in the payment of the sum of $2,160, interest on said mortgage, due on said date. Thereupon, according to the complaint herein, the plaintiff elected that the whole amount of the principal should become due and payable and, on or about April 14, 1931, instituted this action to foreclose said mortgage.

Defendant Hogan interposed an answer containing an affirmative defense to the effect that when he transferred his interest in said property to C. James Bennett, subject to the mortgage herein, said Bennett and his grantees became the principal debtors and that he became a surety to the extent of the value of said property, and when said mortgage fell due on August 1, 1929, plaintiff and the McCarthy estate, without his knowledge or consent, entered into an agreement whereby the payment of the principal of said bond and mortgage was postponed indefinitely in consideration of said estate paying to the plaintiff the sum of six per cent upon the principal of said mortgage instead of five per cent as called for therein; that such agreement altered, changed and modified the terms and conditions of said bond and mortgage and released him from the obligations of said bond and mortgage to the extent of the value of said real estate at the time said agreement was made; that at the time said agreement was made said real property was fairly worth the sum of $200,000 and by reason thereof he was entirely released from all liability upon said bond and mortgage; that, in any event, he was discharged by reason of the negligent failure of plaintiff to foreclose said mortgage while said property was of value sufficient for payment of the mortgage debt.

The infant defendants submit their rights to the court and the other defendants have not appeared or answered.

The question to be determined here is as to whether or not, by the agreement of August 5, 1929, and the failure of plaintiff to foreclose said mortgage, defendant Hogan was released from liability upon the bond and mortgage.

Where a mortgagor sells real property subject to his mortgage, his grantee " in respect to the land, and to the extent of its value, he [the grantee] stands in the relation of a principal debtor, and to the same extent the grantor has the equities of a surety. This follows inevitably from the right of subrogation which adheres in the original contract of sale and conveyance." (*Murray* v. *Marshall*, 94 N. Y. 611, 615.) If a mortgagor sells subject to a mortgage, he remains liable upon his bond and has a right as against his grantee to require that the land should first be exhausted in payment of the debt, so far as it would go. " Through the right of

subrogation the vendor could secure his safety, and that right could not be invaded with impunity." (*Murray* v. *Marshall, supra,* 615, 616.) If the mortgagee, without the consent of the mortgagor, extends the time of payment by a valid agreement with the grantee, he at once, for the time being, takes away the vendor's original right of subrogation and suspends its operation beyond the terms of the mortgage and puts upon the mortgagor a new risk not contemplated and never consented to, and to the extent of the value of the land, discharges and releases the mortgagor. (*Murray* v. *Marshall, supra,* 616.) From the moment of such extension, the risk of future depreciation falls upon the mortgagee, who, by the extension, practically takes the land as his sole security to the extent of its then value and assumes the risk of getting that value out of it in the future. (*Murray* v. *Marshall, supra,* 617.)

" The test by which the question of the discharge of a surety is determinable, is whether the creditor of his principal has made any agreement which, in law or equity, prevents his exercising the rights that belong to his relation of surety for his own prompt and effective protection." (*Jester* v. *Sterling,* 25 Hun, 344, 348.)

Plaintiff contends that it made no agreement, which in law or equity, prevented defendant Hogan from exercising his right of subrogation for his own protection when the mortgage fell due or at any time thereafter.

Plaintiff alleges in its complaint that on or about the 1st of August, 1929, the representatives of the McCarthy estate " agreed with plaintiff to pay six per cent (6%) per annum, thereafter, on said bond and mortgage." It asserts, however, said agreement was without consideration to support it, and is void due to the fact that after the mortgage matured on the 1st of August, 1929, the McCarthy estate and defendant Hogan were obligated, as a matter of law, to pay six per cent on all past due indebtedness. This, undoubtedly, would be true if there had been a default upon the part of the representatives of the McCarthy estate. In *Pryor* v. *City of Buffalo* (197 N. Y. 123) the court said (at p. 143): " It seems to be the general rule of law that the rate of interest is fixed by the contract to pay money up to the time of *default*, but after *breach* the rate of interest is determined, not by the contract, but by statute." The rate of interest fixed in the instrument, where there is no default, prevails until judgment. (*Association, etc.,* v. *Eagleson,* 60 How. Pr. 9, 12; *Andrews* v. *Keeler,* 19 Hun, 87; affd., 90 N. Y. 678; *Elmira Iron & Steel Co.* v. *City of Elmira,* 5 Misc. 194; *Sullivan* v. *Fosdick,* 10 Hun, 173, 181; *People* v. *Merchants' Trust Co.,* 116 App. Div. 41, 53.)

The complaint also alleges that the representatives of the McCarthy estate "failed to comply with the condition of said bond and mortgage by omitting to pay the principal sum of $72,000, which became due and payable on the 1st of August, 1929, *and have further defaulted* in the payment of $2,160, being the *semi-annual interest payment which became due* and *payable* on the 1st of February, 1931; that said *sum remains in default* and the plaintiff *elects* the *whole* of *said principal sum due*, in accordance with the option contained in said bond and mortgage." The fair inference from the testimony and the pleadings is that the plaintiff agreed to let the principal of the mortgage " ride " and to forego foreclosure proceedings, so long as the McCarthy estate continued to pay the interest at six per cent semi-annually. It paid such interest for eighteen months and it was not until default had been made in the interest on February 1, 1931, that the principal was declared due. Even then plaintiff did not institute this action to foreclose the said mortgage until April 14, 1931. By virtue of the agreement of August 5, 1929, there was no default upon the part of the McCarthy estate in payment of the principal of the mortgage until February 1, 1931, when plaintiff declared the same due.

There having been no default upon the part of the McCarthy estate in reference to the principal of the mortgage, on the 1st of August, 1929, the agreement by the plaintiff to let the mortgage " ride " and to withhold foreclosure proceedings if the estate would pay six per cent interest thereafter was based upon a valid consideration and the plaintiff was bound by said agreement to refrain from foreclosing the mortgage until it should first serve a notice upon the McCarthy estate of its intention to terminate such agreement. In *Arnot* v. *Union Salt Co.* (186 N. Y. 501) the court said (at p. 510): "A waiver of strict payment by extending the time in which it may be made is inconsistent with a claim that there has been a default which entitles a mortgagee to proceed under an acceleration clause in a bond and mortgage," and (at p. 511): " If the time for payment has been extended by the consent of the creditor, but no certain time is fixed for payment, the creditor cannot thereafter insist upon immediate payment under penalty of a forfeiture of the contract, but the debtor is entitled to a reasonable time after notice within which to perform."

A promise to extend the time of payment, unless founded on a good consideration, is void. Even "A payment of a part of the debt, or the interest already accrued, or promise to pay interest for the future, is not a sufficient consideration to support such promise. * * * a mere indulgence by a creditor of the principal debtor will not discharge the surety." (*Olmstead* v. *Latimer*,

158 N. Y. 313, 321; *Barden* v. *Sworts*, 112 Misc. 384, 391.) "There must be an agreement for an extension made without the consent of the surety, upon a valid consideration, which precludes the creditor meanwhile from enforcing the debt against the principal, thereby changing the position of the surety." (*Powers* v. *Silberstein*, 108 N. Y. 169, 171.) "When time is given to the principal debtor, though but for a single day, the surety is discharged. The surety, when he pays the debt, must have an immediate right of action against the principal, and that right cannot be postponed for any period, however short, by the creditor without discharging the surety." (*Ducker* v. *Rapp*, 67 N. Y. 464, 472.) A good consideration supports the agreement of August 5, 1929.

"It is settled law that the obligation of a surety is ' *strictissimi juris* and he is discharged by any alteration of the contract, to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury.'" (*Antisdel* v. *Williamson*, 165 N. Y. 372, 375.) "If the time of payment of a mortgage be extended, the right to foreclose is of course suspended until the expiration of the extended term. The extension of the time of payment, if binding, has the effect in equity of modifying the original condition of the mortgage to the same extent as if the terms of the new agreement were incorporated into the condition. A verbal agreement to extend the time of payment is binding, and suspends the right to foreclose if founded on a good consideration and otherwise valid." (2 Jones Mort. [7th ed.] § 1190, p. 826; *Brooks* v. *Wright*, 13 Allen, 72; *Arnot* v. *Union Salt Co.*, *supra*; *DeGroot* v. *McCotter*, 19 N. J. Eq. 531, 534.) Nor does it matter whether the agreement is made before or after the maturity of the mortgage.

Since the agreement between the plaintiff and the McCarthy estate prohibited the plaintiff from calling in the principal of the bond and mortgage so long as the estate continued to pay the interest, or until it had given the estate a reasonable notice of its intention to declare the agreement at an end and elect the principal due, it necessarily follows that defendant Hogan, had he paid plaintiff the principal of the mortgage, after August 5, 1929, could not have proceeded to foreclose said mortgage without first terminating the agreement of August 5, 1929. If his right in this respect was suspended for even a single day, and it was, he was thereby discharged. (*Place* v. *McIlvain*, 38 N. Y. 96, 99; *Adler* v. *Berkowitz*, 229 App. Div. 245.)

"To discharge a surety there must have been an intention to extend the time of payment of the bond." (*N. Y. Life Ins. Co.* v. *Casey*, 81 App. Div. 92, 101.)

The inference from the evidence is that plaintiff and the representatives of the McCarthy estate, when they made the agreement of August 5, 1929, intended that the principal of the mortgage would not be paid so long as the estate should pay interest thereon at six per cent, and that plaintiff would not institute a foreclosure action during such period.

The evidence is to the effect, and it was practically conceded upon the trial, that on August 5, 1929, the property covered by the mortgage was worth $200,000, and was sufficient to discharge the mortgage and all prior obligations covering the mortgaged premises. This being the case, defendant Hogan was released from all liability upon the bond and mortgage. (*Adler* v. *Berkowitz, supra,* 600; *Feigenbaum* v. *Hizsnay,* 187 App. Div. 126, 129.)

Defendant Hogan maintains that, in any event, he was relieved of liability by reason of the neglect of the plaintiff to insist on payment of the principal of the mortgage when it matured on August 1, 1929. This position would be sound had Mr. Hogan notified the plaintiff to do so. "The rule is well settled that in order to exonerate a surety by delay of the creditor to proceed against the principal, the surety must show explicit notice or request to the creditor to take legal proceedings to collect the debt or enforce the liability of the principal." (*Howe Machine Co.* v. *Farrington,* 82 N. Y. 121, 131.)

Plaintiff is entitled to judgment of foreclosure and sale, with costs, as prayed for in the complaint, except it is not entitled to a deficiency judgment against the defendant Hogan, who is entitled to judgment dismissing the complaint as against him, with costs. Plaintiff is entitled to an extra allowance of costs in the amount of $150. The guardian *ad litem* is allowed $50 and his attorneys $150 for their services.

Findings and decree accordingly.