GEORGE L. BARDEN and HAROLD L. BENDEN, Plaintiffs, *v.* R. BONNER SWORTS, FRANCIS J. OLMSTEAD and Others, Defendants.

(Supreme Court, Yates Special Term, June, 1920.)

Foreclosure — mortgages — pleading — extension     agreements — deficiency — judgments.

Premises were incumbered by two mortgages given by the same mortgagors but the several grantees of the premises including the present owner did not assume payment of the mortgages. The complaint in an action to foreclose the second

mortgage pleaded an agreement under seal reciting a consideration paid, between plaintiffs and the then owner of the premises, by which the term of said mortgage was extended and that in consideration of such extension said owner covenanted and agreed to pay the second mortgage. *Held*, upon a consideration of the extension agreement, which the defendant owner claimed was void for want of consideration, and the circumstances under which it was given, that the defendant owner was bound to pay the principal of the bond in suit and was liable for any deficiency arising upon the sale pursuant to the judgment in foreclosure.

By force of the extension agreement the defendant owner became the principal debtor for the amount secured by the bond and mortgage in suit, and was bound to pay it in exoneration of the original obligors, and they, by their answer having pleaded their discharge from personal liability because of the extension agreement, are entitled to judgment that they are not liable for a deficiency, if any, together with costs before and after notice of trial.

ACTION in foreclosure.

Sutherland & Dwyer (A. R. Sutherland, of counsel), for plaintiff.

Spencer F. Lincoln, for defendant Sworts.

Huson & Hyland, for defendant Olmstead.

KELLY, J. This foreclosure action was commenced on November 18, 1919. The complaint alleges that on February 26, 1913, the defendants Francis J. Olmstead and his wife executed their bond to plaintiffs conditioned for the payment of $2,000 on February 26, 1918, with interest at the rate of five per cent per annum, payable annually, and that to secure such payment they executed a mortgage to the plaintiffs covering premises in the village of Penn Yan. It appears that the mortgage was a second mortgage subordinate to a first mortgage to secure $3,000, dated February 7,

25

1903, still unpaid, and now held by the Dundee State Bank under assignment dated January 18, 1917. The premises so encumbered were conveyed by defendants Olmstead to Stark-Nellis Realty Company in October, 1913, by the Stark-Nellis Company to Peer in November, 1913, and by Peer to the defendant Sworts in January, 1917, subject to the two mortgages mentioned, but the several grantees, including defendant Sworts, did not assume payment of the mortgages. The mortgage described in the complaint was due according to its terms on February 26, 1918, and the complaint alleges that on April 9, 1917, the defendant Sworts, who then owned the property, entered into an agreement with the plaintiffs by which the term of the mortgage was extended to February 26, 1919, and that in consideration of such extension Mr. Sworts agreed to and did covenant to pay the debt. It is alleged that the mortgage became due and payable on February 26, 1919, and that there is now due and owing plaintiffs the principal sum of $2,000, with interest from February 26, 1918. Judgment of foreclosure and sale is demanded and that in case of deficiency the defendants Sworts and Olmstead and wife shall be adjudged liable therefor.

The defendants Olmstead answered denying that they were liable in case of deficiency, because of the extension agreement between the plaintiffs and Sworts, which they allege was made without their knowledge and consent, and thus discharged them from personal liability upon the bond. *Calvo* v. *Davies,* 73 N. Y. 211; *Paine* v. *Jones,* 76 id. 274. The plaintiffs withdrew their claim for judgment in case of deficiency against defendants Olmstead. Defendant Sworts, the present owner of the premises, objects, alleging that the extension agreement does not discharge them from personal liability.

Defendant Sworts answers admitting the execution and delivery of the bond and mortgage, that he is the owner of the premises, and that there is due and owing on the bond and mortgage the amount set forth in the complaint; he admits that the bond and mortgage became due and payable on February 26, 1919, but denies that he is liable in case of deficiency and alleges that the extension agreement of April 9, 1917, set forth in the complaint, was without consideration and void.

Defendant Sworts, who is the cashier of the Dundee State Bank, testified that in January, 1917, when he was about to take title to the premises, he telephoned to the plaintiffs, whom he had never met, asking for an extension of the time of payment of the $2,000 second mortgage for two years from January 1, 1917. He says the defendants agreed over the telephone to extend the time of payment as requested. On February 26, 1917, the annual interest payment was due and defendant Sworts, who was then the owner of the property, made out a check on his own bank for $100 to the order of the plaintiffs and mailed it to them. He wrote on the face of the check the words: " Int on Mtg one year and Mtg payment extended two years from Jan. 1, 1917." This check was indorsed by the plaintiffs, collected and the check returned to the defendant Sworts, who offered it in evidence.

On April 9, 1917, the plaintiffs went to the Dundee State Bank in Dundee and met defendant Sworts for the first time. They had with them an agreement extending the time of payment of the mortgage to February 26, 1919, upon a regular printed form, the details inserted in typewriting. It appears that the plaintiffs, through mistaken economy, had the extension agreement prepared by a typewriter operator in

their store or place of business.  One of the plaintiffs,
examined as a witness on the trial, says he handed
the agreement to Mr. Sworts for signature, that he
asked them to come into his office, where he read the
agreement and signed it.  Defendant Sworts testifies
that plaintiffs called at his bank in Dundee, introduced
themselves as the Bardens of Penn Yan and said they
had brought an instrument for his signature, handing
him the extension agreement.  He says he told them he
had already procured an extension which was entirely
satisfactory.  They told him that in case of death of
either plaintiffs or Sworts or in case of change of title
a writing was necessary.  Defendant testifies that he
asked them if there was anything in the instrument
which would make him, defendant, liable and they
answered " no."  He says he told them he would not
sign any paper that would make him personally liable
and that the plaintiff George Barden said there was
no such intention on their part.  The plaintiffs deny
that any such conversation took place.  Defendant says
he read the agreement and that he has been in the bank-
ing business since 1894.  He signed the extension
agreement as did the plaintiffs, in duplicate.  Execu-
tion was acknowledged before a notary public, plain-
tiffs took one copy away with them, he kept the other.

The extension agreement was received in evidence.
The date of the agreement " 9th Aprl." the blank
space for the county in which the mortgage was
recorded, " Yates," and the amount of the mortgage
" Two thousand " dollars are apparently in Mr.
Sworts' handwriting.  The other details are type-
written on the printed blank.  The agreement is
between " R. Bonner Sworts of Dundee N. Y." of the
first part, " George L. Barden of Penn Yan N. Y. and
Harold H. Barden of Gage N. Y." of the second part.
It recites that the parties of the second part " holds "

the bond of the Olmsteads conditioned for the pay-
ment of $2,000 on February 26, 1918, secured by the
mortgage " made and executed by the said," (here
follows a blank space) " containing the same condi-
tions and bearing even date " with the bond, recites
the place of record of the mortgage and that " There
is now due and unpaid upon said bond and mortgage
at the date hereof Two Thousand Dollars of principal
with interest from the 26th day of February 1917." It
recites that R. Bonner Sworts has requested that the
time of payment of the principal sum shall be extended
for " one " (typewritten) years from the " 26th "
day of " February " one thousand nine hundred and
" eighteen " and the parties of the second part in con-
sideration of the premises and of the sum of one dol-
lar to them paid by the party of the first part agree to
extend the time of payment of the principal to the
twenty-sixth day of February which will be in the
year one thousand nine hundred and nineteen, pro-
vided the interest is punctually paid annually on the
twenty-sixth day of February in each and every year
during the extended term. Then follows this clause in
the printed form, the words which I have placed in
quotation marks being inserted in typewriting:

"And provided further, that nothing herein con-
tained shall in anywise impair the security now held
for the said debt. And the said part'y' of the first
part agree's' to the extension of time of payment of
the principal of said bond hereinafter stated and for
'his' heirs, executors and administrators, hereby
covenant's' to pay the same on the 26th day of Feb-
ruary, One thousand nine hundred and 'nineteen'
and to pay the interest thereon on the days on which
the same becomes due, as hereinbefore mentioned."
The agreement is signed and sealed by defendant
Sworts and the two plaintiffs.

Defendant Sworts contends first that this extension agreement was without consideration and void. That on the date of its execution, April 9, 1917, there was in existence a valid extension of the time of payment of the bond and mortgage for two years from January 1, 1917, referring to his telephone conversation, and the writing on the face of his check hereinbefore referred to. And he asserts that the clause in the extension agreement above quoted at length binds his heirs, executors and administrators, but imposes no personal liability on him owing to the omission of the word " himself " in the covenant to pay the debt. Mr. Sworts testifies that as he read the agreement before signing it he noticed that the word " himself " was omitted in the covenant to pay the debt and understood that it did not bind him personally to pay anything.

But I cannot agree with the defendant that the extension agreement of April 9, 1917, was without consideration and therefore void. It is under seal, recites consideration paid and the plaintiffs mortgagees covenant to extend the time of payment of the bond and mortgage. Certainly upon its face it states consideration. But defendant says the time of payment of the bond and mortgage had already been extended by the telephone communication in January, 1917, confirmed by the acceptance and indorsement by plaintiffs of the check for interest in February, 1917, upon which defendant had written " Int on Mtg one year and Mtg paymt extended two years from Jan. 1 1917." I have grave doubt whether the oral communication over the telephone in January, 1917, between defendant and plaintiffs, who had never met, had any effect upon the terms of the existing bond and mortgage, executory obligations under seal, not yet due. It seems to me that the conversation testified to by plain-

tiff involving no consideration or promise on his part, in no way affected the due date of the bond and mortgage. Thomas Mort. (3d ed.) § 216; *Allen* v. *Jaquish,* 21 Wend. 628; *Eddy* v. *Braves,* 23 id. 84; *Dodge* v. *Crandall,* 30 N. Y. 294. The payment of the interest due on February twenty-sixth was no consideration for an extension of time. The mortgagees were entitled to the payment as of right. Lack of consideration avoids an extension agreement even though it be evidenced by writing. *Carr* v. *Morris,* 191 App. Div. 671. The agreement claimed by defendant as existing prior to April 9, 1917, appears to have been void for want of consideration. *Olmstead* v. *Latimer,* 158 N. Y. 313; *Repelow* v. *Walsh,* 98 App. Div. 320; *Babcock* v. *Kuntzsch,* 85 Hun, 615. I conclude, therefore, that the defense of lack of consideration for the agreement of April 9, 1917, is not made out.

Defendant Sworts says that by reason of the apparent omission of the word " himself " in the covenant to pay the bond contained in the agreement of April 9, 1917, he is under no personal obligation to pay the amount due. In other words he seriously advances the proposition that having requested an extension of the time of payment of the bond and mortgage from February 26, 1917, to February 26, 1919, the mortgagees granted such extension upon his promise that his heirs, executors and administrators would pay the interest during the extended period and the principal when it fell due in 1919, but that he assumed no obligation. This is a most extraordinary and anomalous contention. If he was under no obligation to pay, it is hard to see how his heirs, executors or administrators were bound. His argument leads to the conclusion that having granted his personal request for an extension of time by instrument under seal, the mortgagees received nothing for the exten-

sion from him. That if the interest was unpaid during the extended period, or the principal at its expiration, they were no better off than they were before unless the defendant, for whose benefit the extension was granted, died in the meantime. Fortunately he survived the extended period, but he refuses to be bound by the covenant.

I am forced to differ with the contention of the defendant. There is a legal maxim " *Verba intentioni et non e contra debent inservire ut res magis valeat quam pereat* " (Broom Leg. Max. [8th ed.] 539), which may be translated, " Words are to be so interpreted that their actual meaning shall be ascertained in order that the intention of the parties, which is the important thing, shall prevail." The manifest intention of the parties was that Mr. Sworts, the owner of the property, who had requested the extension of time and for whose benefit it was granted should in consideration thereof bind himself to pay the debt if it fell due in his lifetime, and should he die, that the obligation was upon his heirs, executors or administrators. In *Fairchild* v. *Lynch,* Judge Sedgwick, writing for the General Term of the Superior Court of the City of New York, said (42 N. Y. Super. Ct. [10 J. & S.] 267) that there was no need to resort to equity to reform an agreement for mistake, but that when the mistake appears from the instrument itself, the law will enforce the obligation according to its true legal construction and the obvious intention of the parties. The decision in *Fairchild* v. *Lynch,* 99 N. Y. 359, reversing judgment below, is not an appeal from the decision in which Judge Sedgwick wrote the above. " Where the intention of the parties is plain and a material word * * * has been omitted, it is not essential that the instrument be reformed, for in an action at law to enforce liability thereunder the omitted word may be

read into the contract if necessary." *People* v. *Torn,* 110 App. Div. 676, 679, and cases cited. " The construction must be such as will permit rather than destroy, it must be reasonable and agreeable to common understanding, it must also be favorable and as near the minds and apparent intents of the parties as the rules of law will admit, and as observed by Lord Hale, the judges ought to be curious and subtle to invite reasons and means to make acts effective according to the just intent of the parties; they will not, therefore, cavil about the propriety of words when the intent of the parties appears, but will rather apply the words to fulfill the intent, than destroy the intent by reason of the insufficiency of the words." Broom Leg. Max. *supra,* 540–542, and cases cited. In the case at bar I do not think it is necessary to be " curious or subtle " or to invent reasons or means to hold the defendant Sworts on the covenant to pay the debt. The plaintiffs mortgagees covenanted to and did extend the time for the payment of the bond and mortgage — they have performed their part of the agreement made as recited at the request of defendant Sworts. If we look for the consideration moving them and upon which the agreement is based it is a covenant by Mr. Sworts to do, what? — According to the interpretation which he now urges, to do nothing — a meaningless covenant — to impose on his heirs, executors or administrators an obligation which could not be enforced in his lifetime or after his death because if the obligation was not his own he could not impose it upon his heirs and representatives.

I conclude, therefore, that defendant Sworts bound himself to pay the principal of the bond and that he should be held liable if there should be a deficiency.

The only question remaining is raised by the answer of the defendant Olmstead, one of the original makers

of the bond and mortgage. He pleads the making of the extension agreement of April 9, 1917, between plaintiffs and the defendant Sworts who then owned the premises, and that such agreement was made without the knowledge or consent of the original obligor, insisting that by reason thereof he is discharged from personal liability upon the bond. *Calvo* v. *Davies, supra; Paine* v. *Jones, supra.* There appears to be no doubt that the original makers of the bond were so discharged. Thomas Mort. (3d ed.) 184, citing *Spencer* v. *Spencer,* 95 N. Y. 353; *Murray* v. *Marshall,* 94 id. 611, and other cases. The plaintiffs' counsel stipulated in open court that the claim against the defendant Olmstead for deficiency should be withdrawn, and that defendant Francis J. Olmstead should recover costs before and after notice of trial. Defendant Sworts objects, citing *Olmstead* v. *Latimer, supra.* But it is evident that the objection is based upon his claim that the extension agreement of April 9, 1917, was not valid. The decision being against him on that issue I do not see how he can be heard to object. By force of his agreement he became the principal debtor for the amount secured by the bond and mortgage and bound to pay it in exoneration of the original obligors. *Comstock* v. *Drohan,* 71 N. Y. 12; *Vrooman* v. *Turner,* 69 id. 280; *Murray* v. *Marshall, supra.*

It follows that the plaintiffs are entitled to judgment of foreclosure and sale with provision for deficiency judgment against defendant Sworts if there be a deficiency, and with costs against said defendant Sworts. Defendants Olmstead are entitled to judgment that they are not liable in case of deficiency.

Judgment accordingly.